OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1911.

*(Continued from Volume 235)*

## CITY OF ST. LOUIS v. BEDA JUD, Appellant.

In Banc, July 1, 1911.

1. **ORDINANCE: Adulteration of Milk: Enriching Color: Annatto.** An ordinance declaring that milk is adulterated "if it is mixed or colored in any manner whereby damage or inferiority is concealed, or if by any means it is made to appear better or of greater value than it really is," and forbidding the sale of such mixture, is a reasonable municipal regulation, and is valid unless it conflicts with a statute on the same subject. And the addition of annatto to milk, whereby it is given the rich and golden color of milk from cows fed on green food, whether ótherwise harmful or not, and the offering of the same, for sale, is a deception and a fraud upon milk users, and is a violation of said ordinance.

2. **————: Conflict with Statute: Adulteration: Annatto.** Said ordinance is not in conflict with the present statute (Sec. 640, R. S. 1909) which prohibits the sale of "adulterated" milk. To adulterate means "to improve or change their appearance or flavor in imitation of an article of higher grade or of a different kind," and adulteration means a "treatment to simulate a better article," an "artificial concealment of defects;" and the addition of annatto, whereby its color is enriched and its real color is concealed, is an adulteration. And that· being

236 Sup.]                              (1)

the case, there is no conflict between such statute, and an ordinance which declared milk to be adulterated "if it is mixed or colored in any manner whereby damage or inferiority is concealed, or if by any means it is made to appear better or of greater value than it really is."

Appeal from St. Louis Court of Criminal Correction.— *Hon. Benjamin J. Klene*, Judge.

AFFIRMED.

*Wm. L. Bohnenkamp* and *E. F. Stone* for appellant.

Ordinance 24297, section 2, under which this prosecution was had, undertakes to prohibit methods of adulterations other than those to be found in the Revised Code of St. Louis. This action is brought for violation of subdivision 3 of Sec. 2 thereof, for adding to skimmed milk a foreign substance called "annatto," for the purpose of coloring said milk. Annatto is a coloring matter and a foreign substance. The evidence showed that it is absolutely harmless when used in a food product as a coloring matter. Said ordinance is an absolute prohibition against the use of any substance of any kind whatsoever, whether injurious to health or not, as a coloring matter. Therefore, said ordinance is void, as being in conflict with and repugnant to section 10 of an act of the Legislature of this State, Laws 1909, p. 118, for the plain reason that said act prohibits the sale of milk anywhere in this State, containing any foreign substance injurious to health. This act of the State prohibits only the use or addition of such foreign substances as are injurious to health. Here is a plain and irreconcilable conflict and inconsistency between said ordinance and the said statute. St. Louis v. Wortman, 213 Mo. 131. The ordinance operates to forbid that which the statute permits and authorizes, and is, therefore, null and void. "That which is allowed by the general laws of the State can not be prohibited by ordinance." Collins v. Hatch, 18 Ohio, 523; State v. Brit-

tain, 89 N. C. 574; Robinson v. Franklin, 34 Am. Dec. 625; Newton v. Belger, 143 Mass. 598.

*Lambert E. Walther* and *A. H. Roudebush* for respondent.

(1) There is no conflict between ordinance 24297 and Sec. 10 of the Act of 1909, for the reason that adulterated milk is also prohibited by that section of the statute. Law 1909, p. 48, sec. 10; St. Louis v. Klausmeier, 213 Mo. 127. (2) Furthermore, the ordinance definition of adulteration is identical with the statutory definition. Laws 1907, p. 239, sec. 4, cl. 4. (3) Regardless of the foregoing propositions there is no conflict between the ordinance prohibiting substance tending to deceive and the statute prohibiting substances injurious to health; and the ordinance provision is within the police powers of the city. St. Louis v. Polinsky, 190 Mo. 516; Dairy v. Ohio, 183 U. S. 238; Plumley v. Mass., 155 U. S. 475. (4) The statutory provisions here are broader than those in the Wortman case and there is no conflict between ordinance and statute, and the Wortman case is not applicable. Laws 1905, p. 133, sec. 5; Laws 1907, p. 239, sec. 4, cl. 4; Laws 1909, p. 118, sec. 10; St. Louis v. Wortman, 213 Mo. 131.

LAMM, J.—This is one of eight companion cases to test the validity of the milk ordinances of St. Louis—all handed down at this delivery.

Jud was tried in the police court of St. Louis for having in possession on the 1st day of May, 1909, at a given place, with intent to sell and offer and expose the same for sale, skim milk adulterated in that it was colored by annatto, whereby its inferiority was concealed and it was made to appear to be better and of greater value than it really was—all, contrary to ordinance 24297. Convicted anew on his appeal to the court of criminal correction and fined $25, he appeals here.

Section 2 of said ordinance reads:

"Section 2. In addition to other methods of adulteration prohibited by the Revised Code of St. Louis, milk or cream shall be deemed to be adulterated:

"First. If any substance or substances have been mixed with it so as to lower or depreciate or injuriously affect the strength, quality or purity.

"Second. If any substance or substances have been substituted wholly or in part for the same.

"Third. If it is mixed or colored in any manner whereby damage or inferiority is concealed, or if by any means it is made to appear better or of greater value than it really is."

The city offered said section in evidence, supplementing it by testimony of its inspector and chemist to the effect (from the inspector) that he took from defendant's wagon, at the time and place mentioned in the complaint, a sample of his milk, sealed it and delivered it to said chemist; and (from the chemist) that he analyzed the milk, found it contained annatto, a coloring matter used to make milk appear richer in fat than it really is. On cross-examination, he said annatto is not harmful and is used in coloring butter—by not being harmful, he meant when prepared in a pure condition. He then described how it was made and from what, testifying that stale urine is frequently used in its manufacture to give it stability and to keep it moist.

Defendant put in no proof, but stood for his defense on a single proposition, viz.: The ordinance is void as in conflict with an act of the Legislature (Laws of 1909, sec. 10, p. 118)—the argument being that the statute "permits and authorizes" the use of annatto, hence the ordinance falls.

(Note: Annatto is a red or yellowish red dye prepared from the pulp surrounding the seeds of a tree of tropical America, *Bixa orellana*, and used for coloring cheese, etc. Web. Tit. "Annatto.")

The statute, relied on to overturn the ordinance, is section 640, Revised Statutes 1909 (formerly section 10 of an act relating to agriculture and creating a bureau of dairying, Laws 1909, p. 113, *et seq.*)—so far as material reading:

"Whoever shall sell, or offer or expose for sale anywhere in this State, any milk . . . containing any foreign substance, or preservative of any kind whatsoever, injurious to health, or shall sell or offer for sale or deliver to another, for domestic or potable use, or to be converted into any product for human food, any unclean, impure, *adulterated* or unwholesome milk, or milk from which has been held back what is commonly known as strippings . . . shall be guilty of a misdemeanor, and shall be punished," etc.

In the judicial exposition of the matter, a retrospect is in place, viz.:

In 1905 we decided St. Louis v. Polinsky, 190 Mo. 516. That was a prosecution begun in 1903 against Polinsky for carrying and exposing for sale cream adulterated by annatto contrary to an ordinance. We held in that case that adding annatto, whether harmful or not, in order to give milk the rich and golden color of milk from cows fed on green food, was a deception and a fraud upon milk users, and on honest competition; and that an ordinance prohibiting it was a reasonable and valid police regulation. That pronouncement was the unanimous resolution of this court in Banc. It was made on a review of many authorities on full consideration and has never since been shaken or exploded.

In so ruling, we held in judgment the ordinance dealing with the subject in the then condition of our statutory law. Since the Polinsky case there has been State legislation. So that, we start with the assumption that unless the new legislation conflicts with the present ordinance, the charter power of St. Louis to enact it must be taken as ample, and the ordinance itself be held a reasonable regulation.

In 1908 we decided City of St. Louis v. Wortman, 213 Mo. 131, in Banc. That case dealt with a preservative, formaldehyde, in milk. After the Polinsky case and before the Wortman case, a State law had been passed forbidding putting foreign substances or preservatives in milk, injurious to health. Moreover, in 1907 there was enacted a law ordaining that food should be taken as adulterated if it contained any added substance which is poisonous or injurious to health. In view of those two statutes we held in the Wortman case that an ordinance, prohibiting placing *any* foreign substance or preservative *of any kind* in milk, conflicted in its broad language with State laws then in force. In the Wortman case we affirmed a judgment discharging him.

It must be conceded that if there has been no change in the statutes since the Wortman case, that case is authority for reversing the judgment against Jud.

At this point comes the *crux*. The city plants itself on a change in the statutory law, validating the ordinance in question, and that change, so far as material, we have set forth in the language of the statute. [Sec. 640, R. S. 1909, supra.] The defendant relies on the same statute and puts a contrary construction on it.

Attending to that statute it deals not only with foreign substances or preservatives injurious to health, but goes on to denounce *"adulterated"* milk. "Adulterate," means to corrupt, debase, or make impure by an admixture of a foreign or baser substance. [Web. Tit. "Adulterate."] That standard work illustrates the application of the word. It states that articles are adulterated "to improve or change their appearance or flavor in imitation of an article of higher grade or of a different kind." Adulteration is a "treatment to simulate a better article"—an "artificial concealment of defects."

When the statute denounces adulterated milk without defining adulteration, the word may be allowed the meaning given it by lexicographers and understood by people using the English language accurately.

If, however, by the use of the word the lawmaker had in mind the definition of adulterated food given by a former legislature in 1907, it is pertinent to say that we have held the addition of water an adulteration under such statutory definition. [ *Vide*, the third paragraph of the opinion in a companion case, St. Louis v. Ameln, 235 Mo. 669.

So that whether we go to the dictionary or to the former statute, for our definition, the admixture of annatto with milk must be held an adulteration prohibited by State law. In that view of it, there is now no statutory ban upon the ordinance and without such ban the ordinance stands solidly as valid under the police power granted St. Louis. [ *Vide*, the Polinsky case, supra.]

This conclusion runs on all-fours with the good sense of the thing. The housekeeper who buys milk for her table or children should be protected from adroit tricks cheating her judgment by deceiving her eyes. Peradventure, golden-hued milk speaks of cows browsing in dewy meadow grasses. It harks back to blue grass and clover with a sprinkle (as suggested by a learned Brother) of buttercups and daisies—not to annatto or any other dye. If such good woman wants annatto in her milk, the policy of the State is to let her put it in herself.

Fireside lore and philosophy connect rich yellow milk with the *food* of the cow, not with an artificial dye like annatto. Witness—the chimney-corner adages: Barley straw's good fodder—when the cow gives *water*. It is the *head* of the cow gives milk. The cow gives milk through her *mouth*, (*i. e.*, as she is fed).

We conclude that annatto in milk is not only against the policy of our State, and in contravention

of a valid ordinance of St. Louis, but it is a species of petty treason to domestic philosophy and the simple verities of nature itself. Learned counsel for the city said, *ore tenus*, in a flourish of rather startling rhetoric, that the city child now starts on its journey in life flanked by annatto on one side and by formaldehyde on the other. We shall not pass on the issue thus raised, in a hot foot of argumentation, but content ourselves with affirming the judgment on the cold record. All concur, except *Valliant, C. J.*, who dissents.