# THE STATE ex rel. THOMAS B. HARVEY, Circuit Attorney, v. JOSEPH A. WRIGHT.

### In Banc, June 28, 1913.

1. **OFFICERS: Election Commissioners: Restriction on Governor's Power of Appointment.** A provision in a statute requiring the Governor to appoint two election commissioners for St. Louis from "six eligible citizens named by the State committee" of the political party to which they belong, is unconstitutional and void, as an unwarranted encroachment upon the Governor's appointive powers. But it does not render invalid the other provisions of the act prescribing that two of the commissioners shall be taken from the leading party politically opposed to that to which the Governor belongs, for that is a prescription of the qualifications necessary for eligibility to a non-partisan board.

2. ————: ————: **Eligibility: Members of Leading Political Party.** The purpose of creating an election commission of four members in St. Louis was to create a non-partisan board, and that is a proper subject of legislative enactment, and in carrying it out the Legislature was authorized to prescribe that "two of said election commissioners so appointed by the Governor shall be members of the leading party politically opposed to that to which the Governor belongs."

3. ————: ————: ————: **Question of Fact Determined by Governor and Senate.** In a *quo warranto* to oust a respondent who has been appointed by the Governor and confirmed by the

Senate, the question of fact of whether or not he belongs to "the leading party politically opposed to that to which the Governor belongs," is not concluded by the Governor in appointing him or the Senate in confirming the appointment.

4. ———: ———: ———: **Leading Party: In State, Not Nation.** The statute in requiring that "two of said election commissioners so appointed by the Governor shall be members of the leading party politically opposed to that to which the Govenor belongs," had reference to political parties within this State, and not to nation-wide parties—in this case it meant the Republican party, and not the Progressive, which even if it polled more votes in the entire nation at the last general election, did not poll as many as did the Republican party in this State. Prima facie every statute is confined to persons and property rights within the territorial jurisdiction of the legislature enacting it.

5. ———: ———: **Ineligibility Cured by Subsequent Statute.** If respondent was ineligible under the law under which he was appointed, his ineligibility was not removed by the passage, after the suit of ouster was instituted, of a statute which removed the clause of the former statute which rendered him ineligible, unless there is clear and unequivocal expression in the latter statute that it was to have a retrospective operation.

## Quo Warranto.

WRIT GRANTED.

*Spencer & Donnell* for relator.

(1) The burden of proof in a *quo warranto* case is upon the respondent. State ex rel. v. McCann, 88 Mo. 386. (2) The law (Laws 1911, p. 248), providing that in the appointment by the Governor of the four members composing the board of election commissioners, "two of said election commissioners so appointed by the Governor shall be members of the leading party politically opposed to that to which the Governor belongs," is constitutional and mandatory upon the Governor. (a) There is no constitutional direction in Missouri concerning the qualifications of members of the board of election commissioners. (b) In the ab-

sence of such constitutional direction, section 9, article 14, of the Constitution is applicable in its provision: "The appointment of all officers not otherwise directed by this Constitution shall be made in such manner as may be prescribed by law." Ex parte Lucas, 160 Mo. 227; State ex inf. v. Washburn, 167 Mo. 680; People v. Hoffman, 116 Ill. 587; State v. Bemis, 45 Neb. 724; Hovey v. State, 119 Ind. 386; Patterson v. Barlow, 60 Pa. St. 54. (3) The provision concerning the "leading party politically opposed to that to which the Governor belongs" applies only to the political situation in Missouri and not to any other part of the United States, or to the entire United States. "A statute is prima facie confined in its operation to persons and conditions within the territorial jurisdiction of the Legislature." Beale on Cardinal Rules of Legal Interpretation, p. 232. "Prima facie every statute is confined in its operation to the persons, property rights or contracts which are within the territorial jurisdiction of the Legislature which enacted it. "Sutherland on Statutory Construction, sec. 513. A construction will always be given to a statute which prevents absurd consequences, for the Legislature will not be presumed to have intended such results. Verdin v. St. Louis, 131 Mo. 163; Perry v. Strawbridge, 209 Mo. 642. If the contention of respondent is right that the Missouri statute concerning a second leading political party had reference to the political status in the entire country and not exclusively to Missouri, it might follow that even though a party had never organized in Missouri, had cast no votes in this State, in fact had no existence here, yet if it was strong enough outside of Missouri to be second in the United States, it would be entitled to one-half of election officials in Missouri. A political party is defined by the Legislature of Missouri, solely on the basis of the political condition in this State: first, with regard ot the vote it cast "for Governor or for Supreme Judge" in Mis-

souri. Sec. 6014, R. S. 1909. Second, with regard to its proportion of the "entire vote cast in the State." R. S. 1909, secs. 5836, 5837.

*Guy A. Thompson, Walter H. Saunders, H. J. Cantwell* and *Arthur M. Hyde* for respondent.

(1) The Act of March 21, 1913, in any view of the law, validates the respondent's title. Railroad v. Marion County, 36 Mo. 294; State ex rel. v. Miller, 66 Mo. 328; Gibson v. Railroad, 225 Mo. 473; Lovejoy v. Beeson, 121 Ala. 605; Steele County v. Erskine, 98 Fed. 215; Pennsylvania v. Bridge Co., 18 How. 421; Bridge Co. v. Attica, 119 N. Y. 204; Black, Constitutional Law, 547; Cooley, Constitutional Limitations (7 Ed.), 530. (2) The Governor in appointing respondent and the Senate in confirming same determined a political question, after an inquiry imposed by law, and the discretion thus exercised is not subject to judicial review. State ex rel. v. Fletcher, 39 Mo. 388; In re Woodson, 58 Mo. 369; State ex rel. v. Stone, 120 Mo. 428; State ex rel. v. Bolte, 151 Mo. 362; State ex rel. v. Allen, 180 Mo. 27; State ex rel. v. Hitchcock, 241 Mo. 433; Luther v. Borden, 7 How. 1; In re Duncan, 139 U. S. 449; Taylor v. Beckham, 178 U. S. 548; Jones v. United States, 137 U. S. 202; Benson v. United States, 146 U. S. 325. (3) "The leading party politically opposed to that to which the Governor belongs," if not invalid and inoperative by reason of vagueness and indefiniteness, because of no standard or test for determining same, contemplates a political party not in a factional, sectional or local sense, but a nation-wide party. Beardsley v. Bridgeport, 53 Conn. 489; Davidson v. Hanson, 87 Minn. 211; Schafer v. Whipple, 25 Colo. 400; Weaver v. Toney, 107 Ky. 419. (4) The law, if constitutional, is merely directory and not mandatory, and therefore any controversy ended with the appointment of respondent by the Governor. Ex parte Lucas, 160 Mo.

227; Commonwealth v. Plaisted, 148 Mass. 375; State ex rel. v. Sargent, 145 Iowa, 298, 27 L. R. A. (N. S.) 298; State ex rel. v. Seavey, 22 Neb. 454; State v. Bemis, 45 Neb. 724; People ex rel. v. Hoffman, 116 Ill. 587. (5) The preparing of a list of six eligible candidates by the State central committee was a vital feature of the scheme of selections, and if this feature is unconstitutional as counsel for informant admits, then the entire clause falls. State ex inf. v. Washburn, 167 Mo. 680, 697; State ex rel. v. Gordon, 236 Mo. 170; Copeland v. St. Joseph, 126 Mo. 428; State ex rel. v. Clifford, 228 Mo. 194, 208; Spraigue v. Thompson, 118 U. S. 90; Commonwealth v. Hana, 195 Mass. 262, 11 L. R. A. (N. S.) 799; Bonnett v. Vallier, 136 Wis. 193; People ex rel. v. Hurbut, 24 Mich. 44; Cooley, Constitutional Limitations (7 Ed.), 246-250. (6) That part of the act, if mandatory, is unconstitutional because it attempts to grant an exclusive right and privilege to hold this office to a certain class of citizens. State ex inf. v. Washburn, 167 Mo. 688-9; State ex rel. v. Gordon, 236 Mo. 142; Evansville v. State, 118 Ind. 426; State ex rel. v. Holt, 118 Ind. 449; Rathbone v. Wirth, 150 N. Y. 459; People v. Hurlbut, 24 Mich. 44; Attorney-General v. Detroit, 58 Mich. 213; Bowden v. Bedell, 68 N. J. L. 451; State ex rel. v. Sargent, 145 Iowa, 298, 27 L. R. A. (N. S.) 719; Brown v. Russell, 166 Mass. 14, 32 L. R. A. 253. (7) The scheme proposed for the selection of the election commissioners is contrary to the spirit and genius of our constitutions, both State and Federal. State ex inf. v. Washburn, 167 Mo. 680; State ex rel. v. Gordon, 236 Mo. 142; State ex rel. v. Public Schools, 134 Mo. 296; Owen v. Baer, 154 Mo. 434; Beardstown v. Virginia, 76 Ill. 34; Evansville v. State, 118 Ind. 426; State ex rel. v. Holt, 118 Ind. 449; Rathbone v. Wirth, 150 N. Y. 459; Rogers v. Buffalo, 123 N. Y. 173; Shaw v. Marshalltown, 131 Iowa, 128, 10 L. R. A. (N. S.) 825; People

v. Hurlbut, 24 Mich. 44; Baltimore v. State, 15 Md. 376, 74 Am. Dec. 572; Smith v. Thursby, 28 Md. 269.

FARIS, J.—This is an original proceeding in the nature of *quo warranto*, begun by Thomas B. Harvey, as circuit attorney of the city of St. Louis, against Joseph A. Wright, respondent, to try the title by which respondent holds the office of member of the Board of Election Commissioners of the said city of St. Louis.

Respondent was appointed such member of the Board of Election Commissioners by the Governor of Missouri on January 29, 1913, for a term ending January 15, 1917, and duly commissioned as such by a commission duly and regularly issued on February 3, 1913. He has duly qualified by taking the required oath and filing bond.

It is conceded that respondent has been in every way pursuant to law, duly appointed, commissioned and qualified, and that he is in all ways competent to fill this position, save and except as to his political faith and affiliation. He is a member of the Progressive party, and was a member thereof at the time of his appointment. Being so affiliated politically, is he eligible and qualified under the statute below quoted? If he be not so eligible, may he be reached and ousted by this court after being commissioned by the Governor and confirmed by the Senate?

## OPINION.

I.  Respondent was appointed to this office by the Governor of Missouri by virtue of the authority conferred on the latter by the following section of the Act of March 27, 1911 (repealing section 6190, R. S. 1909), to-wit:

"Section 6190.  There is hereby created a nonpartisan board of election commissioners for each city governed by the provisions of this article, composed

of four members who shall be appointed as follows: Within sixty days after this act shall become a law, the Governor, by and with the advice and consent of the Senate, shall appoint for each of such cities four members, who shall hold their offices until January 15, 1913, and until their successors are commissioned and qualified. Successors shall be appointed in like manner and their terms of office shall be four years, and until their successors are commissioned and qualified. Two of said election commissioners so appointed by the Governor shall be members of the leading party politically opposed to that to which the Governor belongs, and shall be chosen from six eligible citizens named by the State committee of the said leading party politically opposed to that to which the Governor belongs and the other two members of said board shall be selected from six eligible citizens named by the State committee of the political party to which the Governor belongs. In making the appointments of the commissioners the Governor shall designate the commissioner who shall be chairman of the board and the one who shall be the secretary of the board, provided the chairman and secretary shall not both belong to the same political party. In case of a vacancy in said board from any cause whatever, it shall be filled in the same manner and from like lists, and subject to confirmation by the Senate, as in the case of original appointments, save that the appointee for any unexpired term shall be a member of the same political party to which the person whom he may succeed belonged, and in no case shall more than two members of said board belong to the same political party.''

So much only of this section is pertinent to this inquiry. Other parts relate to acts of qualification and to character, and to matters and details of residential eligibility, concededly possessed by respondent.

Further narrowing the issues in controversy, relator contends that the appointment of respondent, who

is a member of the Progressive party, violates the following provisions of the above section, to-wit:

"Two of said election commissioners so appointed by the Governor shall be members of the leading party politically opposed to that to which the Governor belongs, and shall be chosen from six eligible citizens named by the State committee of the said leading party politically opposed to that to which the Governor belongs and the other two members of said board shall be selected from six eligible citizens named by the State committee of the political party to which the Governor belongs."

Conceding the violation of the above provision by the appointment of respondent, if it be a fact that the Progressive party is not "the leading party politically opposed to that to which the Governor belongs," the respondent yet contends that the provision quoted is violative of the Constitution. However, his said contentions, so far as they apply to the *whole of this clause*, are not vehement or insistent, or indeed, very urgent.

**Constitutionality of Statute.**

This court in a well-considered case (State ex inf. v. Washburn, 167 Mo. 680), held unconstitutional that part of a similar provision in a similar law which conferred upon a committee of a political party, the privilege of suggesting to the appointing power names of eligible persons for appointment. Under the authority of this case, which is so clearly the law and which is on this point so well-considered, that we shall not again review the reasons, this much of the quoted clause, to-wit, "and shall be chosen from six eligible citizens named by the State committee of the said leading party politically opposed to that to which the Governor belongs, and the other two members of said board shall be selected from six eligible citizens named by the State committee of the political party to which the Governor belongs," clearly falls down as invalid and void, because not constitutional.

If, however, the remaining words of the clause quoted, to-wit: ''Two of said election commissioners so appointed by the Governor shall be members of the leading party politically opposed to that to which the Governor belongs,'' are not invalid for constitutional reasons, then other things being equal, respondent should be ousted.

The Act of March 27, 1911, now under discussion, by the very first sentence thereof, recites as the object of the enactment, that ''there is *hereby created a non-partisan board of election commissioners* for each city governed by the provisions of this article.''  Other provisions of this amendment of 1911 accentuate and make plain this legislative intention so to create such a non-partisan board.  Clearly such a board could not be created and certainly perpetuated, unless the political eligibility of the members thereof were written into the law, and the Legislature so wrote this intent into this law in clear and unmistakable words.

Did the makers of the Constitution, except where otherwise specifically excepted, and except where the power was otherwise specifically lodged, confer upon the Governor of the State the power of appointing officers generally, as distinguished from those of whom specific mention is made in the Constitution?  The view is extant and so persistently so, that this power enures to the Governor, as a power directly and specifically conferred on him by the Constitution, that a setting out of the several provisions of our Constitution touching the appointment of officers is pertinent, may be instructive, and certainly will save the labor of personal investigation.  These provisions, and all of them which are in any manner pertinent, are as follows:

Sec. 11, art. 9: ''Whenever a vacancy shall happen in the office of sheriff or coroner, the same shall be filled by the county court. . . .''

Sec. 32, art. 6: ''In case the office of judge of any court of record become vacant by death, resigna-

tion, removal, failure to qualify or otherwise, such vacancy shall be filled in the *manner prescribed by law.*"

Sec. 11, art. 5: "When any office shall become vacant, the Governor, *unless otherwise provided by law, shall appoint a person to fill such vacancy,* who shall continue in office until a successor shall have been duly elected or appointed and qualified according to law."

Sec. 9, art. 14: "The appointment of all officers *not otherwise directed by this Constitution, shall be made in such manner as may be prescribed by law.*"

Naturally, since we here are dealing with a statute which while conferring on the Governor the power of appointment, yet prescribes the qualifications of the persons who may be appointed, we need not concern ourselves with other statutes passed by the Legislature, and which almost universally have conferred on the Governor the power of appointment of such officers as may be provided for by such statutes. Here the power in the Governor to appoint did not accrue to him directly from the Constitution, but came to him indirectly by delegation from the Legislature, to whom the power of selection or appointment was directly conferred by the Constitution (to be exercised of course not directly, but through statutes). We need only look to the Constitution to see where the power of appointment has its source, so far at least as we are here concerned, that is, with an office and an officer such as is here under discussion and which was created by the Legislature. So looking, we find it lodged in such cases in the Legislature, or left for legislative determination, to be exact.

Our Constitution by its provisions may be said to be a limitation upon the powers of the legislative department, but a grant of powers to the executive branch. It fairly follows that the Legislature may not trench upon, limit, attach conditions or restrict the exercise of such powers as are specifically conferred on the executive branch by the organic law. But in

the myriad forms which governmental functions are compelled to assume in order to fairly meet the necessities, the broadening conditions and mutations super-induced by general development, other powers and duties are created by the Legislature, for the enforcement and performance of which executive machinery must be provided. The Legislature in its discretion as to these matters may confer these powers upon the executive branch or it may wholly withhold them. Viewing these matters broadly it would seem that if the Legislature may not attach to an office and to an officer such as those here considered, such conditions as will make effectual the legislative object and intent, then the Legislature has no constitutional power to pass such a law creating such offices at all.

In conferring this power of appointment on the Governor, the Legislature had the power to attach such conditions to it and to require such qualifications in those appointed by the Governor as it saw fit, so long as those conditions were not shared by others with the Governor, or thrown upon others, wholly or in part, for their determination, and so long as the qualifications were not so drastically restrictive of the executive volition as to become for one of these three reasons in conflict with the constitutional provision requiring the separation and the retaining separate of the three co-ordinate branches of government. [Article 3, Constitution of 1875.] That this is true is persuasively shown by the many statutes now in force making identically such prescriptions, as well as by the trend of the many well-considered cases dealing with this and cognate questions. [State ex inf. Hadley v. Washburn, 167 Mo. 680; State ex rel. v. Gordon, 236 Mo. 142; State ex rel. v. St. Louis, 216 Mo. l. c. 96; Ex parte Lucas, 160 Mo. 218.] We conclude then that the condition of eligibility in an appointee that he shall "be a member of the leading party politically opposed to that to which the Governor belongs," was a

proper, valid and constitutional one, and one which the Legislature had the right to attach to the delegation of the power to appoint, as the only feasible method of carrying out the legislative desire for a nonpartisan board.

II. Coming now to the other branch of this constitutional question: Does the admitted and adjudicated invalidity of the latter part of the clause under discussion render void and bad the first part? Separable Clauses. We think not. As we have seen, the point chiefly sought was a non-partisan board of election commissioners. Regardless of the validity of the provision conferring a limited right of selection upon the State committee, the chief desideratum of the clause yet remains. This point was sought to be attained by making certain the partisanship of those whom the Governor should appoint. If A. and B. were recommended by the State committees as being Democrats, and C. and D. as being Republicans, some conclusiveness on this point of political affiliation at once attached by reason of the manner of selection. But this suggestion of names of six eligible citizens was a mere non-vital detail; the desideratum, a nonpartisan board, could be worked out without it, by simply requiring as a qualification of competency that appointees should be of a certain political faith.

We need not cite numerous cases from other jurisdictions or load down this opinion with text-book excerpts in order to prove that part, a section, a sentence or a clause of a statute may be constitutionally invalid and the remainder good. We may merely say that this is a rule wholly or well-nigh universal in all common law jurisdictions, and one to which this court has lent its concurrence. VALLIANT, J., in the case of State ex inf. v. Washburn, 167 Mo. l. c. 697, said:

"The point is advanced that if the Act of 1899 is unconstitutional in the particular named, the whole act

is void and the incumbent has no title to the office. The power attempted to be conferred on the partisan committee is not an essential element in the whole act. Where the part of an act that is unconstitutional does not enter into the life of the act itself, and is not essential to its being, it may be disregarded and the rest remain in force; that is this case.''

This view was expressly approved in the later case of State ex rel. Tolerton v. Gordon, 236 Mo. l. c. 176, where the court says, referring to the Washburn case:

''The court also held that although the part of the act providing the manner of making the appointment in order to secure a bi-partisan board was void, the remainder of the act was valid, and the court upheld the appointment made by the Governor contrary to the express requirement of law.''

As was so aptly stated by GRAVES, J., in his concurring opinion in the Tolerton case, l. c. 186:

''From it (the law of 1899—which is in this particular precisely similar to the law of 1911, now under discussion), however, we carve out one of the vital things in the minds of the legislative body and say enough is left to make a good law.''

We cannot state the rule better or more briefly. We might state it in different language, by saying that, if after cutting out and throwing away the bad parts of a statute, enough remains, which is good, to clearly show the legislative intent, and to furnish sufficient details of a working plan by which that intention may be made effectual, then we ought not as a matter of law to declare the whole statute bad. [Cooley on Con. Lim. (7 Ed.), 247; State ex rel. v. Gordon, 236 Mo. l. c. 171; State ex rel. v. Taylor, 224 Mo. l. c. 474; State v. Bockstruck, 136 Mo. 335.]

This case is upon the facts and the thing sought to be done clearly to be distinguished from the case of

State ex inf. Washburn, supra.  In the latter case the point up for ruling was whether "so much of the Act of 1899 as attempts to limit the power of the Governor in making the appointment to a choice of persons nominated by the city central committee of a political party, is an unwarranted encroachment on the Governor's constitutional powers" and therefore void.  It was held that it was invalid, and so we here hold as to so much of the Act of 1911, as confers a similar privilege of selection on the State committees of the party of the Governor and the party opposed to him politically.  In the Washburn case the appointee possessed the required political eligibility and belonged to the designated political party; in the instant case the appointee is a member of the Progressive party, and it is insisted that the statute requires the selection of a Republican.

We are not able to see any reason why the provision contained in the first clause of the section under consideration should be invalid for any inherent or self-contained defects.  This provision, in order to certainly secure a non-partisan board, in conferring on the Governor the privilege of appointment, coupled with the grant of the power of appointment certain conditions of qualification in the appointee, to-wit, *that two of them shall be from one party and two from another*.  Does this militate in any wise against that provision of our Constitution (Art. 3, Constitution of 1875) which requires the segregation of our tripartite governmental functions?  We think not.  We have seen that as to officers such as election commissioners, the Constitution has lodged in the Legislature the power of authorizing others to make appointments, or (that which is tantamount) the right of delegating by statute to some one else the ministerial power of appointment.  It says in effect to the Governor: "We have provided for certain officers whom we desire to have appointed; will you appoint them for us; doing so, in

such wise as will effectuate our express intent of securing a non-partisan board?'' It is not an invasion of the authority, or an invasion of the confines of a power given by statute or by the organic law to one co-ordinate branch of government by another such branch; but a valid grant of power by one of such branches to another specially authorized by the Constitution. Aside from the Constitution and the laws based thereon, the Governor has no power to appoint any officer in this State. The Legislature may say to some other executive body, officer or officers, ''You appoint,'' and it is so, and nobody may bring the right into question. Compare the power of county courts to appoint highway engineers, justices of the peace and constables; the power conferred on Board of the Permanent Seat of Government to appoint a State Capitol Commission; the power of the Supreme Court to appoint a clerk, a marshal, a reporter, and the late law empowering the Supreme Court to appoint commissioners (of different political faiths, by express legislative limitation it may be noted in passing). Others might be collated, but to what good? The condition attached of belonging to a certain indefinitely designated political party is a mere condition of qualification, no different in its last analysis from both the statutory and constitutional requirements of age and learning, and residence, as applied to a judge of a circuit court, and other courts of record (Constitution, sec. 26, art. 6; Sec. 3843, R. S. 1909); or to the required qualifications of a prosecuting attorney (Sec. 1000, R. S. 1909); or those of a State highway commissioner (Sec. 1. Laws 1913, p. 697); or those of a deputy highway commissioner (Sec. 4, Laws 1913, p. 697). Such conditions as to differing political faith as a requisite qualification for a membership on one of our many boards is almost the statutory rule rather than the exception. For example, this qualification inheres to the board of curators of the State University (Sec. 11098,

R. S. 1909); to the regents of our several normal schools (Sec. 11067, R. S. 1909); to the State Board of Agriculture (Sec. 597, R. S. 1909); to the State Board of Horticulture (Sec. 605, R. S. 1909); to the State Capitol Commission (Laws 1911, p. 108); as we have seen to the Supreme Court Commissioners, and to others, too numerous to mention here. The reason for these several requisites of different party affiliation is the same as that under discussion here, viz.: to procure non-partisan boards, in each case.

We are constrained to hold then. that the requirement of the Act of 1911 that two members of the board of election commissioners shall be members of the leading party politically opposed to the Governor, is valid and constitutional; that it is not rendered invalid by reason of the unconstitutionality of the remainder of the sentence, nor by any inherent defect contained in its own terms which trench upon the Constitution.

III. Respondent insists that the Governor in appointing him, and the Senate in confirming him, "determined a political question after an inquiry imposed by law," and that therefore such action foreclosed judicial inquiry. The authorities urged upon us as upholding this view are cases where this court refused to control by mandamus the political and ministerial discretion of the executive by compelling him to issue commissions, or to do other acts strictly pertaining to the duties of the executive as a member of a co-ordinate branch of government.

Questions of Fact.

If by this contention respondent means that as a matter of law we may not go behind the commission of the Governor, we answer that this point is fairly well-settled by the case of State ex rel. v. Vail, 53 Mo. 97. In the above case the authorities purport to be reviewed, in so far as this State is concerned, and they were said to be on this point "conclusive on this court."

[State ex rel. v. Vail, 53 Mo. l. c. 109; State ex rel. v. Bishop, 44 Mo. 229; State ex rel. v. Hays, 44 Mo. 230; State ex rel. v. Steers, 44 Mo. 223; State ex inf. v. McAdoo, 36 Mo. 452; State v. McBride, 4 Mo. 303.]

In the case of State ex rel. v. Steers, supra, WAGNER, J., said:

"A person derives his title to an office by his election, and not by his commission; and if he holds and exercises the functions of an office without having been legally elected, it is unlawful holding, and he may be ousted at the instance of the State, notwithstanding his commission. [Bashford v. Barstow, 4 Wis. 567.]"

Changing merely the words "election" and "elected," to "appointment" and "appointed," what is said above fairly well applies to the instant case.

If on the other hand respondent has reference to a question of fact, when he insists that the determination of the Governor and Senate conclude us, the answer may well be that this would be true if the record were silent as to the political affiliation of respondent. The condition would then, however, arise from the entertaining of a presumption, rather than from the application of any inherent doctrine allied to that "divinity which doth hedge a king." We have in the record, however, the clear cut charge that respondent is a member of the Progressive party, as well as his frank admission of the truth of this charge. Can we say in the light of this that respondent is a Republican? Would it not be tantamount to saying that black is white? While appointments to office have been known to change the political complexion of men, respondent stands here solemnly averring that he has not been so affected. Relator inquires with some considerable degree of pertinence whether, if the Legislature had required the appointment of a male to this office and the Governor had appointed and the Senate had confirmed a female, would "she" have become a male *ipso facto,* to the extent of precluding judicial de-

termination of the fact? We think not, though conceding that if the record were silent on this point of party or of sex, a Progressive might be changed to a Republican and a female to a male, within the law's purview from the application of the presumption of "right and solemn performance of a duty enjoined."

IV. It is urged upon us as a question of fact that the Progressive party is from a "nation-wide" point of view the "leading party politically opposed to the Governor." Are we to be governed by the political conditions existing nationally, or by those of our own State? We take judicial notice of matters of current political history; of the political affiliation of the Governor of Missouri as well as of the relative strength of the Progressive party, the Republican party and the Democratic party in this State at the last general election. [1 Chamberlayne, Mod. Law of Ev., sec. 800.] From this we know that the Democratic party polled in this State at the last general election the greatest number of votes, followed by the Republican party and the Progressive party respectively in the order named. The leading party in this State politically opposed to that to which the Governor who appointed respondent belongs, is then the Republican party, and not the Progressive party to which respondent belongs. No contention, indeed, is made on this point as upon a matter of fact. As such it is tacitly at least conceded; though it is urged that to the Governor and to the Senate was committed the duty of determining this fact in their discretion and that this determination concludes us, whether exercised with the facts or against them. We have discussed this contention already and need not again go into it further than to say that we disallow it, for it is after all based upon a fiction of law and a fiction of the law ought to yield in a direct attack to the facts when the latter stand admitted in an action.

*Leading Party.*

which we think relator had the right to institute and this court to examine and adjudge.

We must ascertain the meaning of a statute by looking at it in a sense by the four corners. This statute provides that the "State committee of the said leading party politically opposed to that to which the Governor belongs" shall do certain things. It might well be, if respondent's contention be correct, that the leading political party in a nation-wide sense would have neither adherent, voter, party, or organization in this State, thus by such logic leading up to a ridiculous and impossible situation. [Verdin v. St. Louis, 131 Mo. l. c. 163; Perry v. Strawbridge, 209 Mo. l. c. 642.] Besides this *reductio ad absurdam,* which would seem to settle this contention, certain presumptions confine us to our own State. A statute is prima facie confined in its operation to persons and conditions within the territorial jurisdiction of the Legislature. [Beale on Rules of Legal Interp., p. 232.] "Prima facie every statute is confined in its operation to the persons, property rights or contract which are within the territorial jurisdiction of the Legislature which enacted it." [2 Lewis's Sutherland on Stat. Con., sec. 513.] We elect to our offices our own citizens, of our own State, under the provisions of our own laws. We never elect by direct suffrage a citizen of another State to any office; these are the elections at which the election commissioners act, and the elections which they are required to hold. We conclude then that it is too clear for argument that by the "leading party politically opposed to that to which the Governor belongs," is meant the "leading party" *in this State.*

V. Finally it is urged that the passage of the Act of March 26, 1913, Laws 1913, p. 344, so far validates the appointment of respondent as to render nugatory the whole of this inquiry; that it converts this lawsuit into an aca-

**Retrospective Law.**

demic discussion, and makes of it a moot question merely.

It is more than possible that this is true as a matter of practice; also we may say, without offense, as a matter of practical politics. But it is not true as a matter of law. There is no emergency clause appended to this act, and it is not yet in force. (An emergency clause would in our view, however, add nothing toward making it apply.) The act by its terms in no wise purports to look backward or to be designed *as a matter of law* to be curative in its intent. This law bears none of the outward earmarks of a retrospective statute. Unless it bears such *indicia*, a discussion in the light of the rules of construction would seem to be but "weary, stale, flat and unprofitable," for our court has said in the case of State ex rel. v. Dirckx, 211 Mo. l. c. 577:

"The settled rule of construction in this State, applicable alike to the constitutional and statutory provisions, is that, unless a different intent is evident beyond reasonable question, they are to be construed as having a prospective operation only. [State ex rel. v. Greer, 78 Mo. l. c. 190; State ex rel. v. Frazier, 98 Mo. 426; Leete v. Bank, 141 Mo. 574; Shields v. Johnson County, 144 Mo. 76; Cooley on Constitutional Lim. (6 Ed.), page 77; Shreveport v. Cole, 129 U. S. 36.]"

This rule is also in consonance with the text-book law:

"It is well-settled rule of construction that laws relate to the future, and are not to be construed retrospectively, or to have a retrospective effect, unless. it shall clearly appear that it was so intended by the Legislature, and unless such construction is absolutely necessary to give meaning to the language used." [6 Am. & Eng. Ency. of Law, p. 939.]

"In every case of doubt the doubt must be resolved against the retrospective effect." [36 Cyc. 1208.]

Whatever title respondent possesses to the office he claims was acquired by him and has its existence, and derives its virtue, if any, solely and alone from the provisions of the Act of 1911 under which he was appointed. He must stand or fall by that law, since he has never been appointed under any other law and obviously may never be appointed under the Act of 1913 or any other act, regardless of the creation of a vacancy. We are not saying that any reason is known to exist militating against his appointment under the Act of 1913. Upon this point we do not pass, however.

Other points urged we need not discuss, in the light of the fact that the amendment of the Act of 1911 by the Act of 1913, will shortly, when it shall become effective, so change the law as to render much that has been said and all further that could be said somewhat like unto ancient history.

It follows that, under the provisions of the Act of 1911, respondent was not eligible to appointment as a member of the Board of Election Commissioners, and that the writ of ouster prayed for should issue, and it is so ordered.

*Lamm, C. J., Woodson, Brown, Bond* and *Walker, JJ.,* concur; *Graves, J.,* concurs in result only.