FIREARM'S SECURITY, INC., d/b/a
The Bull's Eye, Plaintiff–Appellant,

v.

ARMORY FACILITIES, LTD., et al.,
Defendants–Respondents.

GATEWAY INDOOR SOCCER CLUB,
INC., Plaintiff–Appellant,

v.

ARMORY FACILITIES, LTD., et al.,
Defendants–Respondents.

FIREARM'S SECURITY, INC., d/b/a The
Bull's Eye and Gateway Indoor Soccer
Club, Inc., Plaintiffs–Respondents,

v.

ARMORY FACILITIES, LTD., et al.,
Defendant–Appellant,

Sterling Lacquer Manufacturing Compa-
ny, et al., Defendants–Respondents,

and

St. Louis Hinder Club, Ltd.,
Defendant–Intervenor.

Nos. 70349, 70088.

Supreme Court of Missouri,
En Banc.

Nov. 15, 1988.

Rehearing Denied Dec. 13, 1988.

Frank J. Niesen, Jr., St. Louis, for Ar-
mory Facilities.

Mark C. Piontek, Richard B. Dempsey,
Washington, for Firearm's Sec.

Cordell Siegel, St. Louis, for appellants.

James W. Riner, Jefferson City, for St.
Louis Hinder Club.

William L. Webster, Atty. Gen., Richard
L. Wieler, Asst. Atty. Gen., Office of Ad-
min. Jefferson City, Richard J. Magee,
John F. Hanlon, Clayton, for respondents.

WELLIVER, Judge.

This is an appeal from the order of the
Cole County Circuit Court entering summa-
ry judgment in favor of John A. Pelzer,

Commissioner of the Office of Administration (Commissioner) and Sterling Lacquer Manufacturing Company (Sterling) confirming sale of the St. Louis Armory Building to Sterling and against Firearm's Security, Inc., d/b/a The Bull's Eye (Firearms), Gateway Indoor Soccer Club, Inc. (Gateway) and St. Louis Hinder Club, Ltd. (Hinder), intervenor, alleged lessees who were declared to have no right of occupancy of the Armory Building. The court also overruled Armory Facilities, Ltd. (Armory Facilities) motion to dismiss and declared the Notice of Lis Pendens to be void, neither of which actions appear to be disputed, and ordered Sterling to pay $250,100, the amount of its high bid, into the registry of the court to be distributed in accordance with the evidence to be adduced as to each party's proper share. The judgment was declared final for appeal.

Armory Facilities filed a direct appeal to this Court basing jurisdiction upon unconstitutionality of the legislative enactment authorizing the sale, Senate Bill 782, 83rd General Assembly, Second Regular Session, 1986. Firearm's and Gateway filed appeals to the Court of Appeals, Western District. The Commissioner moved and was granted transfer of those two appeals to this Court prior to opinion. While there is substantial question regarding our jurisdiction of the Armory Facilities appeal, in the interest of judicial economy we retain the cases and decide as on original appeal. Mo. Const. art. V, §§ 2, 10. We affirm the summary judgment of the trial court confirming the sale and declaring the Lis Pendens void and remand for resolution of all other issues.

## I
## THE FACTS

The case involves the sale by the State of the St. Louis Armory Building.

The Armory was built in 1937 by the City of St. Louis. In 1962 it was deeded to the State and was occupied by the National Guard until 1971. Various groups occupied the building from 1971 to 1976. In May of 1976, a not-for-profit corporation was created to occupy and run the Armory, which

corporation is today known as Armory Facilities. By the Reorganization Act of 1974, title to real estate such as this was vested in the Governor who could not convey or otherwise transfer title without authorization of the General Assembly.

Armory Facilities has run and occupied the Armory building from 1976 until the present time. There is no evidence of a formal lease having ever been executed by the State to Armory Facilities. It is undisputed that from 1976 to the present Armory Facilities did occupy and run the building either as a licensee or lessee of the state and during such period that other parties to the litigation occupied certain portions of the premises, at some times pursuant to formal leases and at other times pursuant to oral leases. Gateway primarily operated an indoor softball or soccer field, Firearms a firearms store and indoor firing range, and Hinder handball courts. At times these primary operations included associated bar and lounge and other recreational facilities. All, including Armory Facilities, had made improvements necessary to their operations. There was no question that the State was fully aware of the extent and nature of all operations.

In 1986, Senate Bill 782 was enacted providing:

Section 1. 1. The commissioner of administration is hereby authorized to conduct a public sale, by either public auction or sealed bid, of the hereinafter described real property. The governor is hereby authorized to convey title to the property to the highest bidder at the sale by quitclaim deed.

2. The property to be conveyed is located in the city of St. Louis, comprises property formerly known as the St. Louis National Guard Armory, is under the control of the office of administration, and is described as follows:

. . . .

3. The commissioner of administration shall set such terms and conditions for the sale as he shall deem reasonable, including but not limited to, the time, date, and place for the sale, shall arrange

for appraisals, and shall determine the method of payment.

4. The commissioner of administration is directed to give credit to the lessees for any improvements which have been constructed by the lessees in or on the property described in subsection 2 of this section. In the event that the credit for the improvements is not sufficient to make the lessees the top bidder for the property, the money received from the successful bidder shall be first paid to the lessees in the amount of the lessees' credit and the remaining money shall be paid to the state of Missouri.

5. The successful bidder shall take the property described in subsection 2 of this section subject to the Red Cross being able to use such property as a disaster center and storage facility for three years after the date of sale. The Red Cross shall be able to use such property for this three-year period without paying any rent, however, the Red Cross shall be responsible for their pro rata share of the utilities, taxes and insurance.

6. No lessee shall be evicted or requested to vacate the property described in subsection 2 until after the closing date of the conveyance described in subsection 1.

7. Notice of the sale along with the terms and conditions shall be given in a newspaper of general circulation within the city of St. Louis.

8. The attorney general shall approve the instrument of conveyance.

Following enactment of S.B. 782, Gateway and Firearms prepared itemized lists of the improvements claimed by each and transmitted them to Armory Facilities. Firearms alleged $137,990.41 of improvements. Gateway alleged $246,700 of improvements. Armory Facilities compiled a list of $326,000 of improvements which consisted of their and Hinder's improvements. Hinder alleges $150,000 of improvements leaving Armory Facilities with $176,000 of claimed improvements. Armory Facilities combined the three lists of claimed improvements and submitted the entire amount of $710,690.41 to the Commissioner. The Commissioner reviewed the list and advised that he would allow only $212,-500 of the alleged $710,690.41.

The Commissioner then advertised the Armory Building for sale and received bids as follows: The St. Louis Drum and Bugle Corps, $1,500,000; Sterling $250,100, and Armory Facilities $212,510, being the amount allowed by the Commissioner for improvements plus $10. The bid of St. Louis Drum and Bugle Corps was rejected when their deposit check bounced and Sterling was declared the high bidder. The filing of the various suits, cross-suits, and counter-suits followed.

The trial court entered summary judgment for the Commissioner and Sterling confirming the sale and ordering it to be closed and finalized; declared the Lis Pendens void; ordered the purchase price of $250,100 paid into the registry of the court; and, reserved all issues pertaining to proper distribution of the proceeds for later determination.

## II

If, under the terms of the statute and the undisputed facts reflected in the pleadings and affidavits, the Sterling bid was in fact the high bid, then the summary judgment confirming the sale should be affirmed. Rule 74.04(c) (summary judgment is authorized if there is no genuine issue as to any material fact); *Packet Dairy, Inc. v. Ziegler's Super Market, Inc.*, 676 S.W.2d 926, 927 (Mo.App.1984) (summary judgment is not precluded if the only facts charged to be in dispute are the differing opinions of the parties as to the legal effect of an ascertained state of facts); *Seliga Shoe Stores, Inc., v. City of Maplewood*, 558 S.W.2d 328, 331 (Mo.App.1977) (not every factual dispute will bar summary judgment; the dispute must involve a material fact, one which has legal probative force as to a controlling issue).

■ It is argued that the combined alleged improvements constituted the high bid under the terms of the statute. In this connection, we find not one line of any affidavit or pleading which seeks to submit

either the combined or as individual improvements as a bid for the property. If, for the purposes of argument we say that Armory Facilities submitted the combined improvements of all lessees as a bid, then they did so by conceding the correctness of the Commissioner's valuation of the improvements without objection of any party. This figure was not high enough to constitute the high bid. Neither the improvements alleged by Gateway, Firearms, Hinder or Armory Facilities individually constituted a sum greater than the Sterling bid. The trial court correctly ruled that Sterling's bid was the high bid. It is neither briefed nor argued that the requested preliminary injunctive relief was a bar to entry of the summary judgment. The trial court appropriately ordered summary judgment confirming the sale and declaring void the Lis Pendens.

### III

Armory Facilities' appeal to this Court would invoke our jurisdiction on the ground that Section 5 of S.B. 782, giving occupancy rights to the American Red Cross for a period of three years, constitutes special legislation, under Mo. Const. art. III, § 40(28). It was argued that Armory Facilities was without standing to raise the issue,[1] and, that if Section 5 did in fact constitute special legislation, that Section 5 was severable from the remainder of the bill. § 1.140, RSMo 1986, declares the standard for severability:

> **1.140 Severability of statute provisions.**—The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions

without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Section 1.140, RSMo 1986. *See also State ex rel. Public Defender Comm'n v. County Court of Greene County*, 667 S.W.2d 409, 413–14 (Mo. banc 1984) and *Gramex Corp. v. Von Romer*, 603 S.W.2d 521, 526 (Mo. banc 1980). If, after eliminating Section 5 "enough remains which is good to clearly show the legislative intent, and to furnish sufficient details of a working plan by which that intention can be made effectual", *State ex rel. Harvey v. Wright*, 251 Mo. 325, 337, 158 S.W. 823, 826 (banc 1913), then Section 5 is severable and the remainder of the act remains. There would, in our opinion, be no question about the severability of Section 5, were we required to deal with that issue.

At the hearing on the motion for summary judgment, the trial court was presented with a quit claim deed from the American Red Cross to the State of Missouri, thereby rendering it unnecessary that we decide either the question of facial unconstitutionality; standing to raise such issue; or severability.

### IV

On remand, we perceive but one troublesome problem—the question of whether S.B. 782 authorizes the Commissioner to determine the value of the parties alleged improvements.

■ Section 4 states that "The Commissioner of Administration is directed to give credit to the lessees for any improvements which have been constructed on the property ..." In the factual background, it appears clear that "lessees" refers to all occupants of the building who are parties herein, be they licensees, lessees or sublessees. Clearly, nothing in the bill authorizes the Commissioner to "determine the

---

1. *Ryder v. County of St. Charles*, 552 S.W.2d 705, 707 (Mo. banc 1977) (only those who are adversely affected by a statute have standing to challenge its constitutionality); *St. Louis Public Service Co. v. City of St. Louis*, 302 S.W.2d 875,

879–881 (Mo. banc 1957) (one who voluntarily proceeds under a statute to claim benefits thereby conferred, cannot later question its validity in order to avoid its burdens).

value" of the improvements. On the other hand, we do not believe the legislature intended that the words "[that the Commissioner] give credit to the lessees for any improvements which have been constructed" meant that the Commissioner was bound to credit any figures submitted by lessees. We can only conclude that the legislature intended the reasonable value of the improvements, and that if such could not be agreed on by the parties, of necessity, it would become a matter for determination by an impartial trier of fact. The Commissioner and one of the parties, Armory Facilities, had no authority to bind the other parties by purported agreement that the Commissioner properly valued the improvements. On remand, either the parties shall stipulate or the court shall determine the reasonable value of improvements made by Gateway, Firearms, Armory Facilities and Hinder and shall pro-rate the proceeds as their interests appear, with the remaining money, if any, to be paid to the State pursuant to Section 4 of S.B. 782. *Cf. City of St. Louis v. Wabash Railroad Co.*, 421 S.W.2d 302, 306 (Mo. banc 1967).

▬ There being no formal leases or agreements with the State, no party in possession has rights of possession greater than that of a tenant from month to month. All, we believe, have by reason of Section 6 of S.B. 782 and the pendency of these proceedings, had notice to vacate upon determination of the amount of improvements made by the parties and distribution of the proceeds of the sale of the building and final closing of this transaction.

Since all of the acts complained of in the many cross and counter claims for damages were acts done by the parties seeking to comply with the terms and procedures of sale set forth in S.B. 782, it would appear that such claims for damages are without merit. All that remains is valuation of the reasonable value of improvements, possibly set-off of any unpaid rents, and proration of the proceeds of sale. Clearly, Palliser has no standing to enjoin the sale and his petition should be dismissed.

Summary judgment confirming the sale is affirmed; the Lis Pendens held void; and, the cause remanded for distribution of sale proceeds in accordance herewith.

Affirmed in part and remanded with orders.

BILLINGS, C.J., and DONNELLY and HIGGINS, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

ROBERTSON and RENDLEN, JJ., dissent and concur in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

Summary judgment is a drastic remedy, strictly dependent on a finding that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.-04(c). The principal opinion effectively denies the appellants the right to judicial review of the administrative valuation of the improvements the appellants have made to the armory property. In holding that they are barred from asserting their maximum claims on procedural grounds, the opinion effectively rules factual equitable issues as though they were questions of law. I do not believe that the case is ripe for summary determination.

Part I of the principal opinion accurately states the facts. I also agree with the holding of Part III that the provision for the American Red Cross does not render the entire statute unconstitutional. My dissent is directed at Part II.

Three things are clear from the governing statute, Senate Bill 782, 83rd General Assembly, Second Session, 1986, as follows: (1) the lessees are to receive "credit ... for any improvements which have been constructed by the lessees in or on the property ...;" (2) the lessees are entitled to use this credit in bidding on the property; (3) the lessees are entitled to aggregate their entitlements in bidding, ("make the *lessees* the top bidder"). The principal opinion, in affirming the trial court's finding that respondent Sterling Lacquer Manufacturing Company's bid of $250,100 was the high bid, effectively deprived the appellants of the opportunity to establish their entitlement to their claim of $710,690.41 as the value of the improvements. Although

the opinion recognizes that the statute does not give the office of administration the authority to make a conclusive determination of the value of the improvements, it relegates the appellants to the difference between the commission's value of $212,500, and the sale price of $250,100. Thus appellants, to realize on claims amounting to nearly $500,000, have recourse only to a fund of $37,600.

The record shows that there is a genuine issue of fact as to the valuation of the improvements. The appellants charge that the commissioner disallowed claims which, in his opinion, did not serve to "maintain the structural integrity of the building." It is suggested that this limitation goes beyond the language of the statute. The commissioner, by the appellants' submissions, excluded labor costs for donated labor, but the statute refers to "improvements constructed" and does not limit the allowance for improvements to the cost. It is also alleged that the commissioner refused to recognize "improvements in the form of a bar" and "improvements to the firing range." For purposes of the motion for summary judgment the appellants' allegations as shown in the file of the circuit court must be taken as true. These allegations show a real dispute between the lessees and the office of administration. The circuit court may reject all or part of the appellant's claims on the merits, but they are entitled to be heard.

The commissioner, after drastically limiting the appellants' claims, then proceeded to advertise the property for bidding. He made it clear that the lessees could use only $212,500 for their own bidding without committing themselves to a cash outlay. The principal opinion faults the lessees because they did not "submit either the combined or individual improvements as a bid for the property." This they could have done only by a cash exposure which the legislature did not require.

I do not believe that, in law and equity, they were obliged to expose their cash position to preserve their valuation claims. By our established procedures they were entitled to seek judicial review of the commissioner's decision so that they would be fully aware of their entitlement before bid-

ding commenced. Nor should it be held that appellant Armory Facilities, Inc. prejudiced its position or those of the other appellants by tendering the allowed figure of $212,500 as a bid. This amounts simply to saying that the lessees would take the property if no bid were received in excess of the amount the commissioner agreed was due to the lessees. The principal opinion presents no further rationale for holding that the lessees have no means of realizing upon the major portion of their claim. Nor do any of the arguments submitted by the commissioner and the successful bidder support the grant of summary judgment in the face of this real and live controversy.

The commissioner argues, first, that the appellants are not "lessees" because the formalities for leasing state property were not complied with, and so are not entitled to compensation under the language of the statute. It is suggested that they are at the most licensees or privilege holders, and that their rights do not rise to the dignity of interests in land. On remand the appellants could introduce evidence as to the origin of their interests, as an aid in determining the legislature's intent in using the term "lessee." We must assume that the legislature knew who were in possession of the property and that improvements had been made which it felt should be compensated. The legislators no doubt were more concerned with facts than with the niceties of legal nomenclature.

The commissioner argues, not too loudly, that the statute gives him the sole authority to determine the value of the improvements on the armory property. This argument flies in the face of our entire legal tradition, which does not allow bureaucrats to make decisions affecting property rights which the persons affected may not question in court.

Both the commissioner and the purchaser argue that the appellants did not take proper steps under the Administrative Procedure Act to challenge the commissioner's decision on the valuation. The purchaser is clearly wrong in asserting that the lessees are barred by the thirty day provisions of § 536.110, RSMo 1986, because the commissioner's decision is not a "contested case" in which the administrative agency

acts following notice and formal hearing. The commissioner is neither a judge nor a quasi-judicial officer. *See Long v. Bates County Mem. Hosp.*, 667 S.W.2d 419, 421 (Mo.App.1983). The commissioner argues that there was no effort to obtain review under § 536.150, but this section is a general provision, designed to facilitate review of administrative decisions rather than to limit access to the courts. The section is not exclusive of other procedures such as the declaratory judgment action the appellants resorted to. The present suit, indeed, would be an appropriate action within the contemplation of that section. No time limit is expressed § 536.150. So the present action is properly commenced to review the commissioner's valuations.

The respondents claim, essentially, that the appellants were guilty of laches in not bringing suit until the commissioner had rejected the greater part of their claims and advertised the property for sealed bidding. Laches, and related defenses sometimes referred to as "waiver" or "estoppel," are equitable defenses which simply cannot be ruled on summary judgment. Application of laches would depend on a finding that the appellants had been guilty of unconscionable delay in waiting until the bids had been received and the property sold, and only then undertaking to challenge the sale. It might be said in support of a contrary position that the lessees did not know, before the bids were received, that the accepted bid would fall far short of their claims. At least one bidder thought that the property was worth $1,500,000. Had that bidder been financially responsible, the resulting sale would have provided sufficient funds to pay whatever value the appellants could establish for their improvements, with a surplus for the state. On remand the court below will be able to weigh the equities of the appellants and of the purchaser, who now stands to get the property for much less than at least one bidder thought it was worth. Perhaps, if the trial court found the commissioner's valuation of the improvements inadequate, the bidder would raise its figure so as to make the lessees whole.

The commissioner's decision as to valuation was transmitted January 28, 1987.

The bidding was first advertised March 18, 1987 and bids were opened April 14, 1987. On May 4, 1987 the highest bid was rejected for financial irresponsibility and respondent Sterling was declared the high bidder. The suits now on appeal were filed July 16 and 17, 1987 and summary judgment was entered November 12, 1987. These circumstances do not indicate any undue delay. The amount of the accepted bid is small, by the state's standards, but a substantial amount for individuals or nonprofit organizations. There is no need for undue haste in closing, at the expense of elemental due process for the appellants' unresolved claims.

The appellants have stated claims of equitable cognizance. The court below is a court of equity, possessed of the full powers of chancery. If the case were terminated by summary judgment the appellants would be deprived of the opportunity to litigate their claims and would be prejudiced by the unilateral decision of the commissioner of administration. This we should not countenance.

I would reverse the judgment and remand the case for further proceedings consistent with my opinion.