GRAMEX CORPORATION et al., Appellants,

v.

Harry E. VON ROMER et al., Respondents.

No. 61720.

Supreme Court of Missouri, En Banc.

July 15, 1980.

Rehearing Denied Sept. 9, 1980.

Stephen C. Murphy, Clayton, for appellants.

John Ashcroft, Atty. Gen., Joel S. Wilson, Asst. Atty. Gen., Jefferson City, for intervenor-defendant-respondent.

Allen S. Boston, Andrew Rothschild, Richard Ahrens, St. Louis, for intervenors-defendants-respondents.

DONNELLY, Judge.

This appeal challenges the validity of § 578.110, RSMo Supp.1979, and involves the construction and application of art. VI, § 8, of the Missouri Constitution.

Section 578.100, RSMo 1978, commonly referred to as Missouri's "Sunday Sales" or "Blue Law," provides, in part:

"Whoever engages on Sunday in the business of selling or sells or offers for sale on such day, at retail, motor vehicles; clothing and wearing apparel; clothing accessories; furniture; housewares; home, business or office furnishings; household, business or office appliances; hardware, tools; paints; building and lumber supply materials; jewelry; silverware; watches; clocks; luggage; musical instruments and recordings or toys; excluding novelties and souvenirs; is guilty of a misdemeanor * * *."

In 1977, this section was amended, and in 1978, § 578.105 was enacted, to provide certain Missouri counties an opportunity to exempt themselves from the application of § 578.100. In 1977, the people of the counties of Jackson, Clay, and Platte availed themselves of § 578.100.5 to exempt themselves from the provisions of the law. Revisor's Note, § 578.100, RSMo 1978. And, in 1978, the people of the counties of Buchanan and Cass voted to exempt themselves through the procedure outlined in § 578.105. Revisor's Note, § 578.105, RSMo Supp.1979.

In 1979, the General Assembly passed, and the Governor approved, House Bill No. 56 (now codified as § 578.110, RSMo Supp. 1979), the subject of this litigation. This section provides in part:

"1. As used in this section, the term 'area' includes all cities not within a county, all first class counties having a charter form of government and adjoining such cities not within a county and all first class counties which adjoin such first class counties having a charter form of government and adjoining cities not within a county; and the term 'county' means any county of this state not within an area.

"2. In addition to the counties which may exempt themselves from the application of section 578.100, under the provisions of section 578.100, or section 578.-105, any other county or area may also exempt itself from the application of section 578.100 by a vote of the qualified voters of the county or area; provided that, before any area may so exempt itself from the provisions of section 578.-100, the qualified voters of each city not within a county and each county within such area shall vote on the proposal for exemption from the provisions of section 578.100, RSMo, at the same election and a majority of the total votes cast in such area shall be in favor of the proposal before either such city or any of such counties may be exempted from the provisions of section 578.100."

Appellant Gramex Corporation is engaged in the business of retail sales in St. Louis County and the City of St. Louis. Gramex operates four "Grandpa Pigeon's" stores, a sporting goods store, and a computer store in the St. Louis area.

On August 9, 1979, Gramex and its president, J. W. Holley, filed a petition in the Circuit Court of St. Louis County seeking a declaratory judgment that § 578.110 is unconstitutional and asking for injunctive relief. Named as defendants were members of the St. Louis County Council and the St. Louis County Board of Election Commissioners, the Secretary of State of Missouri, and the Revisor of Statutes for the State of Missouri.

Thereafter, the Attorney General of Missouri, pursuant to § 527.110, RSMo 1978, moved to intervene as defendant, as well as six corporations making up the "Committee for Blue Law Repeal," which sponsored a petition drive to place on the November 6, 1979, ballot the proposition to exempt, per § 578.110.1, the "area" of the City of St. Louis, St. Louis County, Jefferson County, and St. Charles County, from the provisions of § 578.100. The members of the Board of Election Commissioners, the Secretary of State, and the Revisor of Statutes moved to be dismissed. The motions to intervene

were sustained by the circuit court. The motions to dismiss were taken with the case.

On October 11, 1979, on the basis of a written stipulation of facts and the testimony heard in an evidentiary hearing, the trial court denied the declaratory and injunctive relief, finding § 578.110 "not unconstitutional in any respect."

On October 15, 1979, appellants requested this Court to expedite the appeal. This request was denied.

On November 6, 1979, the election proceeded. The proposition failed to carry a majority of the votes in the "area." On the same day, however, electors in Boone, Lafayette, Marion, Ralls, and Saline counties voted to exempt themselves from § 578.100 by use of the provisions of § 578.110. Revisor's Note, § 578.110, RSMo Supp.1979.

█ Although the election has already been held, and no part of the St. Louis area has been exempted from § 578.100, as appellants feared, the case is not moot as it involves questions "capable of repetition, yet evading review." *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

Appellants argue that § 578.110 violates art. VI, § 8, of the Missouri Constitution which provides:

"Section 8. *Classification of counties — uniform laws.*—Provision shall be made by general laws for the organization and classification of counties except as provided in this constitution. The number of classes shall not exceed four, and the organization and powers of each class shall be defined by general laws so that all counties within the same class shall possess the same powers and be subject to the same restrictions. A law applicable to any county shall apply to all counties in the class to which such county belongs."

This provision is violated, appellants contend, because § 578.110.1, although written in general terms, does not apply uniformly

to all counties of the same class as required by the last sentence of art. VI, § 8. The statute does not apply uniformly, appellants argue, because the City of St. Louis, St. Louis County and Jefferson and St. Charles counties, as an "area," are required to vote as a block, *i. e.*, a majority of the total votes cast in the "area" is necessary to exempt the "area" from § 578.100, a requirement not imposed on other first class counties, *e. g.*, Greene County. In addition, the statute only provides one method for submitting the exemption question to the voters in the "area"—by petition—whereas other counties, including other first class counties, may submit the issue *either* by petition or upon a majority vote of the governing body of the county. On its face, then, § 578.110 seems clearly to violate the constitutional proscription of art. VI, § 8, which states: "A law applicable to any county shall apply to all counties in the class to which such county belongs."

When art. VI, § 8, is read in its entirety, however, a question is raised as to whether the only laws which the last sentence of the section requires to be applicable to all counties within a class are laws dealing with the *classification and organization* of counties.

The case of *Chaffin v. County of Christian*, 359 S.W.2d 730 (Mo. banc 1962), is cited by intervenors as support for this interpretation. *Chaffin*, at 734, states:

"Prior to the adoption of the 1945 Constitution, there was no constitutional provision with respect to classification of counties or limitation upon the number of classes which the legislature might create. As a result, numerous classifications were made for different purposes. The purpose of the constitutional provision was to simplify and make more effective the organization and operation of the counties. It provides that the provisions for the organization and classification of counties shall be by *general laws* and that the organization and powers of each class shall be defined by *general laws*."

The *Chaffin* opinion, in ascertaining the purpose of § 8, relied on the report of the Committee on Local Government and re-

marks made by that Committee's chairman, Dr. William L. Bradshaw, in presenting the section to the Constitutional Convention for perfection. The Committee's report stated:

"Section 8 is a new one on the organization and classification of counties. It is similar to Section 7 [now art. VI, § 15] which provides for the organization and classification of cities. The provision is designed to permit a more flexible system of county government rather than one uniform system as now required. It will permit the Legislature to formulate a more simple set-up of government for counties of relatively low valuation. It is also consistent with a home rule provision for a few larger counties whose problems are essentially different from the other counties. Such a home rule provision has been tentatively approved by Committee No. 8."

Report of the Committee on Local Government—No. 9, File No. 11, p. 6.

Dr. Bradshaw's remarks to the Convention concerning this section included this statement:

"The Committee considers that the provisions for classification of counties are very important because under the interpretation the present version of uniformity idea in our government that we have basically the same fundamental framework of government in the smallest rural county and in the largest urban one. It remains, and in some cases you have too much governmental machinery, and in other cases you have to build a huge superstructure on a very small foundation. We thought a provision permitting the classification of counties would enable the Legislature to work out a more suitable governmental set-up for counties, various types of counties in the state. That's the purpose of the section."

Debates of the Missouri Constitution 1945, p. 2207.

Although Dr. Bradshaw's remarks and the Committee report very clearly state that the purpose of the section was to provide for the organization and classification of counties and the first two sentences of

the section obviously relate to that purpose, nothing in Dr. Bradshaw's statement or in the report shed any light on why the last sentence is present in § 8. To ascertain why the last sentence is included, we must dig deeper into the history of the section.

Three proposals relating to local government were submitted to the Convention. The proposal that most closely resembled the Committee's ultimate recommended section was introduced by Delegate Howard C. Potter, a Springfield attorney. His proposal, No. 314, read:

"The general assembly shall provide by general laws for the organization and class of counties. The number of such classes shall not exceed four and the power of each class shall be defined by general law so that all counties of the same class will possess the same powers and by such to the same restrictions: Provided, nothing in this provision contained shall be construed to prevent the establishment of alternate forms of county government.

"No law shall be enacted which shall not apply to all of the counties in at least one of the classifications established by the general assembly."

Proposals, The 1943–44 Constitutional Convention of Missouri, No. 314.

Like the last sentence of art. VI, § 8, the last sentence of Potter's proposal appears extraneous to the proposal's primary task of charging the General Assembly with the responsibility of organizing and classifying counties. The only clue as to the purpose of Potter's last sentence (which came out of the Committee, reworded, as the last sentence of present § 8) is found in remarks made by Potter on the floor of the Convention during debate pertaining to the section.

Delegate Allen McReynolds, a state senator from Carthage, introduced an amendment to the Committee's recommended § 8. It, in effect, struck out the Committee's recommended section in its entirety and replaced it with McReynolds' proposal to the Convention, a proposal that would have conferred the task of classifying and organizing Missouri counties on the Convention itself, rather than on the General Assembly.

A debate ensued as to which of the proposed sections was the wiser—McReynolds' or the Committee's. Potter (the source of the Committee's section) rose to offer an amendment to the McReynolds' amendment. Potter's amendment was to add the last two sentences of the Committee's proposed section to McReynolds' proposal. Why? Potter told the Convention:

"Mr. President, the purpose of this amendment is to carry forth in the McReynolds' substitute the second portion of the Committee's report of Section 8, which it seems to me is equally as important as the first. I think under the present statutes there are some one hundred and twenty-one classifications of counties for various purposes and I think it would be [a] very wholesome thing if these classifications were reduced and laws were made applicable to the counties more generally than they are at the present time. *Not so long ago we found an unusual situation in Greene County. We had no provisions for Assistant Prosecuting Attorneys by virtue of the fact that in the enactment of various laws the Legislature had left out a small group of population figures between ninety and nine[ty]-five thousand and counties not having a city of the first class and as a result we were helpless for a short period of time until the Legislature could act and this provision will prevent recurrence of those conditions,* and in event the McReynolds' proposal is adopted will carry forth this very important provision to the new Constitution."

Debates of the Missouri Constitution 1945, pp. 2232–33. It is clear from his remarks that Potter was concerned about laws other than those dealing with the classification and organization of counties. He wanted to be certain that a law, e. g., providing for assistant prosecutors in a certain class of county, would be made applicable to all counties within that class.

■ We are cited to no case, and have found none, which holds explicitly that the last sentence of art. VI, § 8 applies only to laws relating to the organization or classifi-

cation of counties. *See, e. g., State on inf. Taylor v. Kiburz*, 357 Mo. 309, 208 S.W.2d 285 (banc 1947); *Inter-City Fire Protection Dist. v. Gambrell*, 360 Mo. 924, 231 S.W.2d 193 (banc 1950); *Collector of Revenue v. Parcels of Land Encumbered with Delinquent Taxes*, 362 Mo. 1054, 247 S.W.2d 83 (banc 1952); *Chaffin v. County of Christian, supra*, 359 S.W.2d 730 (Mo. banc 1962); and *State ex rel. Stevenson v. Kirkpatrick*, 536 S.W.2d 740 (Mo. banc 1976).

We conclude that those portions of § 578.-110 which treat first class counties by *area* are unconstitutional because they treat the first class counties in the St. Louis area differently from Greene County, the only other first class county not covered by special legislation (*i. e.*, § 578.100.5, dealing with Jackson, Clay, and Platte counties). They violate the last sentence of art. VI, § 8, which requires that a "law applicable to any county shall apply to all counties in the class to which such county belongs."

■ The question then becomes whether those portions of § 578.110 which are unconstitutional are severable from the rest of § 578.110, or whether all of § 578.110 must fall. If the language which pertains to "area" is excised from § 578.110, what is left is a statute which permits "any * * county" to "exempt itself from the application of section 578.100, by a vote of the qualified voters of the county * * * ." This, of course, would include the City of St. Louis. § 1.080, RSMo 1978.

Section 1.140, RSMo 1978 states:

"Severability of statute provisions.— The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provisions that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

The same principle was expressed in *State ex rel. Audrain County v. Hackmann*, 275 Mo. 534, 543, 205 S.W. 12, 14 (banc 1918):

"The test of the right to uphold a law, some portions of which may be invalid, is whether or not in so doing, after separating that which is invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the Legislature would have enacted if it had known that the exscinded portions were invalid."

We hold that after eliminating the "area" method of exemption, "enough remains, which is good, to clearly show the legislative intent, and to furnish sufficient details of a working plan by which that intention may be made effectual * * *." *State ex rel. Harvey v. Wright*, 251 Mo. 325, 337, 158 S.W. 823, 826 (banc 1913). We conclude that, after excising those portions invalidated, the remainder of § 578.110 is severable and valid. *State ex rel. Enright v. Connett*, 475 S.W.2d 78 (Mo. banc 1972).

The judgment is reversed and the cause remanded.

BARDGETT, C. J., and WELLIVER, MORGAN and HIGGINS, JJ., concur.

RENDLEN, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of RENDLEN, J.

RENDLEN, Judge, dissenting.

The majority holds that § 578.110, RSMo Supp.1979, which creates an artificial polity locking three counties and our largest city into the single voting block or "area," violates art. VI, § 8, Mo.Const. With this I concur. However, the majority also concludes that those provisions of the statute, not excised as unconstitutional, are severable and remain standing. With this I do not agree and must respectfully dissent for the reason that the remaining portions of the act provide a scheme of Blue Law exemption in direct contradiction to the ex-

pressed intent of the legislature, hence the statute must fall.

The starting point of this analysis calls for examination of the legislative history of the "Blue Law" ban in Missouri. Blue Law legislation has been a part of Missouri law since before the inception of statehood and can be found in our statutes beginning with the territorial acts of 1814. See Act, January 8, 1814, 1 Terr.L., chpt. 102 § 1. This ban has been carried forward in various forms by ensuing legislative enactments to this date.[1]

In 1977 the legislature allowed three counties (Jackson, Clay, and Platte) to individually exempt themselves by local election from the Blue Law prohibition. See Laws of Mo.1977, p. 725 (now codified as § 578.100, RSMo 1978). Pursuant to that authorization, the electorates of Jackson (1977), Clay (1977), and Platte Counties (1977) opted to exempt their counties. See Revisor's note, § 578.100, RSMo 1978.

The legislature, in 1978, extended the exemption authorization to, "any county of the second class as of 1977 that is adjacent to any county containing a portion of a city with the population of more than 400,000" if the county containing the major portion of a city over 400,000 voted for exemption. See Laws of Mo.1978, p. 787 (now codified as § 578.105, RSMo 1978.) Under this legislative authorization the electorates of Buchanan County (1978) and Cass County (1978) each voted to exempt their respective counties from Blue Law coverage.

In 1979 the legislature by enactment of H.B. 56 (codified as § 578.110, RSMo 1979—the subject of this appeal) extended exemption authorization to every county in the state by allowing the voters of those counties not covered by § 578.100 and § 578.105 to exempt themselves on a county by coun-

ty basis. There was however an exception driven into the heart of the statute. The City of St. Louis and the counties of St. Louis, Jefferson, and St. Charles were not permitted the freedom of the other counties but instead were confined to a package or "area." A majority of voters in the *combined* city and counties was required to exercise the exemption in the statutory "area." See Laws of Mo.1978, p. 987 (approved April 25, 1978, effective date August 13, 1978.)[2]

This sketch of Blue Law history reveals two facets of legislative intent with respect to the challenged statute. *First*: the legislature, with apparent reluctance, has allowed exemption from the long standing public policy that certain items may not be sold on Sunday, to proceed only incrementally or step by step. *Second*: the legislature has displayed special concern for St. Louis and certain surrounding counties when fashioning § 578.110's *area* exemption provisions. The legislature apparently perceived unique attributes in the St. Louis area market necessitating that Blue Law exemption be permitted there only on an area wide basis. Perhaps the legislature *feared that in such a large yet integrated market,*[3] the effects of Blue Law exemption would splash beyond city or county lines impairing the economic or sabbatarian interests of the residents of adjoining included counties. Whatever the motivation, the legislature's intent is unmistakable that voters in the block could only exempt themselves from Blue Law coverage by majority vote in the *entire area*. See § 578.110.2, RSMo Supp.1979. An additional feature of the statute, manifesting the special legislative concern as to St. Louis City and St. Charles, Jefferson and St. Louis Counties is the provision that this *area* exemption vote could be triggered only by petition signed

---

1. See Laws of Mo.1963, p. 685; § 4742 RSMo 1939; § 4351 RSMo 1929; § 3599 RSMo 1919; § 4804 RSMo 1909; § 2243 RSMo 1899; § 3855 RSMo 1889; § 1581 RSMo 1879; chpt. 206 § 35 GSMo 1865; p. 209 § 31 RSMo 1835; Laws of Mo. 1825, p. 311 § 92; Act Jan. 8, 1814, 1 Terr.L., chpt. 102 § 1.

2. The voters of Boone, Lafayette, Marion, Ralls, and Saline Counties voted to exempt themselves from Blue Law coverage pursuant to this provision on a county by county basis. See Revisor's note, § 578.110, RSMo Supp.1979.

3. This "area" contains 1,772,458 people or approximately 38% of Missouri's 4,672,983 million people according to 1970 census figures.

by a number of voters equal to 8% of votes cast in the next preceding gubernatorial election in the *area.* See § 578.110.3, RSMo Supp.1979.

Under the majority's holding that the act's remaining provisions are severable from those declared unconstitutional, the City of St. Louis and the counties of St. Louis, St. Charles and Jefferson will be stripped of the legislatively intended area *protection* or *burden* (depending on one's policy preference) and can proceed on a county by county basis though the legislature explicitly mandated an *area wide* vote for those counties. Such result, in direct derogation of the legislature's expressed intent requires the act be held non-severable. Particularly is this true under the strict severability standard adopted in *Labor's Education and Political Club-Independent v. Danforth,* 561 S.W.2d 339, 350 (Mo. banc 1977) (hereinafter LEPCI), this Court's most recent decision on the subject.

As in *LEPCI,* where the Campaign Finance and Disclosure Act was struck down, the definitional section of this statute must certainly be invalidated. See § 578.110.1, RSMo Supp.1979.[4] The majority here states, "those portions of § 578.110 which treat first class counties by area are unconstitutional . . ." 603 S.W.2d at 526. Hence the definitions of both area and county contained in § 578.110.1 must be stricken as each is premised upon the constitutionally defective concept of "area." Here following is the full text of § 578.110 with the portions effectively excised by the majority underlined and bracketed:

578.110. Counties may be exempted from provisions of § 578.100, procedure.— [1. *As used in this section, the term 'area' includes all cities not within a county, all first class counties having a charter form of government and adjoining such cities not within a county and all first class counties which adjoin such first class counties having a charter form of government and adjoining cities not within a county; and the term 'county' means any county of this state not within an area.*]

2. In addition to the counties which may exempt themselves from the application of section 578.100, under the provisions of section 578.100 or section 578.105, any other county [*or area*] may also exempt itself from the application of section 578.100, by a vote of the qualified voters of the county [*or area; provided that, before any area may so exempt itself from the provisions of section 578.- 100, the qualified voters of each city not within a county and each county within such area shall vote on the proposal for exemption from the provisions of section 578.100, RSMo, at the same election and a majority of the total votes cast in such area shall be in favor of the proposal before either such city or any of such counties may be exempted from the provisions of section 578.100.*]

3. In order to exempt itself from the provisions of section 578.100, the county [*or area*] shall submit the proposition to the voters of the county [*or area*] at any election, and the proposition shall receive a majority of the votes cast. The proposition to exempt the county from the provisions of section 578.100, shall be submitted to the voters of the county upon a majority vote of the governing body of the county or when a petition requesting the submission of the proposition to the voters and signed by a number of registered voters residing in the county equal to eight percent of the votes cast in the county in the next preceding gubernatorial election is filed with the governing body of the county. [*When a petition signed by a number of registered voters residing in the area equal to eight percent of the votes cast in the area in the*

---

4. The definitional section of § 578.110 is found in subsection 1.

As used in this section, the term 'area' includes all cities not within a county, all first class counties having a charter form of government and adjoining such cities not within a county and all first class counties which adjoin such first class counties having a charter form of government and adjoining cities not within a county; and the term 'county' means any county of this state not within an area.

*next preceding gubernatorial election requesting the submission of a proposition to exempt the area from the provisions of section 578.100, is filed with each of the governing bodies of the area, the proposition shall be submitted to the voters of the area.*] The ballot of submission shall contain, but need not be limited to, the following language:

To exempt . . . county [*or the area consisting of . . . city and . . . counties*] from the Sunday sales law.

___ Yes          ___ No

If a majority of the votes cast on the proposal by the registered voters voting thereon in the county [*or area*] are in favor of the proposal, then the provisions of section 578.100, shall no longer apply within that county [*or area*]. If a majority of the votes cast on the proposal by the registered voters voting thereon in the county [*or area*] are opposed to the proposal, then the provisions of section 578.100, shall continue to apply and be enforced within that county [*or area.*] The exemption of the county [*or area*] from the provisions of section 578.100, shall not become effective in that county [*or area*] until the results of the vote exempting the county [*or area*] have been filed with the secretary of state and with the revisor of statutes and have been certified as received by those officers. The revisor of statutes shall note which counties [*or areas*] are exempt from the provisions of section 578.100, in the Missouri revised statutes.

After removal of those portions invalidated by the principal opinion, § 578.110.2 will read in relevant part:

"In addition to the counties which may exempt themselves from the application of § 578.100 under the provisions of § 578.100 or § 578.105, any other county . . . may also exempt itself from the

application of § 578.100, by a vote of the qualified voters of the county . . . .

Consequently § 578.110 as now altered by the Court permits the voters of St. Louis City, St. Louis County, St. Charles and Jefferson Counties to exempt themselves on a county by county basis. This result stands squarely athwart the Blue Law exemption process intended for the city and the designated St. Louis area counties, for as noted above, the legislature explicitly rejected such result when fashioning the statutory "area" provisions. Moreover, from the following events I perceive an additional expression of this legislative intent. During the 80th General Assembly, a scheme was introduced to permit such *individual* voting arrangement for St. Louis City and the surrounding counties. This scheme contained in H.B. 55 (a companion bill to H.B. 56, now RSMo § 578.110) failed in committee.[5] This failure, followed by the adoption of H.B. 56 bespeaks the unequivocal intent that the city and counties could not *individually* exempt themselves from the Blue Laws but could do so *only* by "*area*" vote. Thus while it might be said the remaining provisions of § 578.110 (H.B. 56) constitute a "working scheme," that scheme not only failed in passage but was effectively repudiated by the final enactment of H.B. 56. I cannot believe this Court is vested under any accepted doctrine of "severability" with the authority to reshape the statutes contrary to the express intention of the legislature, much less to allow the remains of § 578.110 to stand under the view of severability taken by this Court in *LEPCI.*

Prior to *LEPCI v. Danforth, Id.*, Missouri followed a widely accepted and moderate doctrine of severability aimed toward salvaging viable portions of a statute, after partial constitutional extirpation, when the remaining portions contained a workable statutory scheme, consistent with the legis-

---

5. At the same time H.B. 56 (later § 578.110) was introduced, H.B. 55 was introduced. House Journal, 80th Gen. Assy., 1st Sess. 52 (1979). This bill would have permitted the people of "[a]ny county of this state" to vote for exemption from § 578.100. H.B. 55 was referred to the Committee on Local Government

and related matters on January 9, 1979, and the Committee failed to take any further action effectively killing the bill. *Id.* at 172. That same Committee recommended that H.B. 56 be passed. *Id.* at 370. After several amendments H.B. 56 became what is now codified as § 578.110.

lative intent and which could reasonably be said to effectuate that intent. In *LEPCI* this Court adopted a harsh uncompromising view of severability and struck down the remaining portions of the Campaign Finance and Disclosure Act adopted by the voters in the 1974 Initiative Election. That act contained a comprehensive and detailed scheme for election reform in Missouri. While *LEPCI* invalidated, for constitutional reasons, the expenditure limits and provisions relating to disclosure of sources of private income, four of the principal features of the act remained,[6] each possessed of independent vitality and susceptible to enforcement in accordance with the intentions of the electorate. Also the Act contained an express severability clause manifesting the legislative (people's) intent to save the remaining parts.[7] Thus in spite of the command of § 1.140, RSMo 1978,[8] and the presence of a strong severability clause, the viable portion of the Act[9] was stricken as nonseverable.

Here, the vestige of the Act (which has no saving severability clause) would absolutely transmute the legislative intent, hence under the doctrine of *LEPCI* that part of the statute left standing cannot be deemed lawfully severable. For these reasons I would declare the statute invalid and remand the cause with directions to the trial court to enter a declaratory judgment as prayed and for appropriate injunctive relief.

---

**6.** The remaining portions of the Act which included a vast majority of its provisions included the following valid features of the Act: Feature 1, STRICT ACCOUNTING PRACTICES REQUIRED OF CANDIDATES & COMMITTEES; Feature 2, CANDIDATES AND COMMITTEES REQUIRED TO PUBLICLY DISCLOSE AND REPORT CONTRIBUTIONS AND EXPENDITURES WITH SPECIAL PROVISIONS FOR TIME FOR FILING REPORTS; Feature 3, PROHIBITIONS AGAINST CORPORATIONS, UNIONS, TRUST COMPANIES AND BANKS CONTRIBUTING DIRECTLY OR INDIRECTLY TO ANY CANDIDATE; and Feature 4, ESTABLISHMENT OF THE "MISSOURI ELECTIONS COMMISSION" WITH STATEWIDE AUTHORITY AND RULE MAKING POWERS.

**7.** The presence or absence of an express severability clause in the terms of a legislative enactment is an important factor in determining legislative intent. See *Florida Realty, Inc. v. Kirkpatrick*, 509 S.W.2d 114, 119 (Mo.1974). This rule may have been discarded or rendered lifeless by *LEPCI v. Danforth*, 561 S.W.2d 329, 350 (Mo. banc 1977).

**8.** Section 1.140, RSMo 1978, provides:

The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

**9.** Quantitatively 122 of 140 sections of the Campaign Finance and Disclosure Act remained. These constituted 85% of the Act.