STATE of Missouri ex rel. CITY OF
ELLISVILLE and Committee for
Incorporation, et al., Appellants,

v.

ST. LOUIS COUNTY BOARD OF
ELECTION COMMISSIONERS,
et al., Respondents.

No. 76199.

Supreme Court of Missouri,
En Banc.

May 26, 1994.

As Modified on Denial of Rehearing
June 21, 1994.

Daniel G. Vogel, Eric F. Tremayne, Clayton, for appellants.

Donald K. Anderson, Jr., St. Louis, for City of Ellisville.

John A. Ross, St. Louis County Counselor, Andrew J. Minardi, Associate County Counselor, Clayton, for St. Louis County Boundary Com'n and St. Louis County.

Steven W. Garrett, Clayton, for Bd. of Election Com'rs.

ROBERTSON, Judge.

This is another in the seemingly endless line of annexation cases arising out of St. Louis County.

In response to the near chaos that has historically marked St. Louis County annexation activities, the General Assembly passed House Bill 487 in 1989. The bill, codified as Sections 72.400 to 72.418, RSMo Supp.1991, and commonly called the boundary commission law, purported to establish a boundary commission with authority over all proposed municipal boundary changes within St. Louis County. By its terms, House Bill 487 applied to "any first class county with a charter form of government which adjoins a city not within a county." § 72.400.2, RSMo Supp. 1991. The statutory language limited the law's application to St. Louis County.

In May, 1990, the cities of Bridgeton and Hazelwood each proposed annexations. Part of the Hazelwood proposal overlapped one of the two proposals submitted by Bridgeton. The boundary commission approved the Hazelwood proposal and the St. Louis County election board submitted it to the affected voters. When the proposal appeared to have received voter approval, Bridgeton brought suit against Hazelwood, challenging, among other things, the constitutionality of the boundary commission law. In *O'Reilly v. City of Hazelwood*, 850 S.W.2d 96, (Mo. banc 1993), this Court found that the boundary commission law's application to St. Louis County alone violated the constitutional prohibition against special laws where a general law could be made applicable. Mo. Const. art. III, § 40(30).

In 1992, the legislature amended the boundary commission law, making its provisions applicable to "any first class county with a charter form of government which contains a population in excess of nine hundred thousand." Section 72.400.2, RSMo Supp.1993. This appeal considers whether the statute's new language violates the constitutional requirement that "[a] law applicable to any county shall apply to all counties in the class to which such county belongs." Mo. Const. art. VI, § 8. The trial court upheld the constitutionality of the law against the article VI, section 8 attack. We have jurisdiction to consider cases involving the validity of a statute of this state. Mo. Const. art. V, § 3. For the reasons that follow, the judgment of the trial court is affirmed in part, reversed in part, and remanded.

I.

This case has a complicated procedural pedigree. In December, 1992, a group of citizens known as the Committee for Incorporation of Wildwood (the "Committee") filed a petition with the St. Louis County Boundary Commission (the "Boundary Commission") to incorporate a new city within the county to be known as Wildwood. Within the area of the proposed City of Wildwood is a subdivision known as Tartan Green. On January 13, 1993, the St. Louis County Board of Election Commissioners (the "Election Board") certified that the petition contained sufficient signatures to meet the requirements of Section 72.080, RSMo Supp. 1993.

The City of Ellisville had begun formulating annexation plans in hopes of placing its proposals before the voters in August, 1993. Ellisville filed its annexation plans with the Boundary Commission to achieve that end. On March 24, 1993, the Boundary Commission certified Ellisville's initial annexation proposals to the Election Board for a vote at the August, 1993 election.

One day earlier, on March 23, 1993, this Court decided *O'Reilly*, striking down the 1989 version of the boundary commission law. In the wake of *O'Reilly*, the Committee filed photocopies of its original petitions for incorporation with the county council on March 29, 1993. The Committee now claimed authority to incorporate under Section 72.080, not 72.400, *et seq.* Also on March 29, Ellisville filed three new annexation proposals with the county council and the Election Board, bypassing the Boundary Commission. This time Ellisville's proposed annexations included the Tartan Green subdivision.

The Election Board informed Ellisville that it would take no further action on its annexation proposals. The Election Board continued to believe that the law required the Boundary Commission to pass on all annexation proposals prior to certification for election. Ellisville responded by filing a mandamus action in the Circuit Court of St. Louis County on April 16, 1993. The mandamus questioned the authority of the Boundary

Commission to act at all and sought judicial orders removing the previous Ellisville annexation from the August ballot and replacing it on the ballot with the new annexation proposals the city had filed.

The Committee, St. Louis County, and other interested parties intervened. The Committee, hoping to preserve its plans to incorporate the Tartan Green area, filed a cross claim seeking a declaratory judgment that Section 72.080 applied to their petitions and that the boundary commission law, as amended, violated the due process guarantee of article I, section 10 of the Missouri Constitution, equal protection and article VI, section 8.

The trial court heard evidence and, in a long and helpful order, declared that Sections 72.405.7(1) and 72.405.8 violated article I, section 10, severed those sections from the remainder of the boundary commission law and ordered that all proposals for incorporation and annexation must proceed initially through the Boundary Commission. Consistent with this ruling, the trial court denied Ellisville's request to place its new annexation proposal on the ballot.

Following the trial court's decision, Ellisville, the Committee and the Boundary Commission all brought appeals to this Court.

## II.

### A.

Article VI, section 8, provides:

Provision shall be made by general laws for the *organization and classification* of counties *except as provided in this constitution.* The number of classes shall not exceed four, and the organization and powers of each class shall be defined by general laws so that all counties within the same class shall possess the same powers and be subject to the same restrictions. *A law applicable to any county shall apply to all counties in the class to which such county belongs.*

[Emphasis added.] The Committee asserts that the boundary commission law violates article VI, section 8.

■ Statutes carry a strong presumption of constitutionality. *Adams v. Children's*

*Mercy Hospital,* 832 S.W.2d 898, 903 (Mo. banc 1992). Nevertheless, the Court will declare a statute unconstitutional where it clearly contravenes the constitution. *Id.*

The Boundary Commission and St. Louis County argue that the constitution places first class charter counties in a special category such that the mandates of article VI, section 8, do not apply. They reason that the phrase "except as provided in this constitution," contained in the first sentence of section 8, means that the provisions of section 8 do not apply when other provisions in the constitution dictate a contrary result. They further assert that article VI, section 18, which authorizes county government by charter, creates the exception to which they contend section 8 refers. Citing no direct authority for their argument beyond hope, the Boundary Commission and St. Louis County reason that if the framers had intended section 8 limitations to apply to charter counties, they would have included similar limiting language in section 18.

Reduced to its essence, respondents' argument posits that section 18 authorizes a fifth class of counties—charter counties. They urge that county laws are analogous to city laws; that *Leoffler v. Kansas. City,* 485 S.W.2d 633, 634 (Mo.App.1972), holds that statutes applicable to first class cities do not apply to first class charter cities; and that statutes applicable to first class charter counties should likewise be exempt from the application of article VI, section 8 because article VI, section 18 excepts charter counties from the provisions of article VI, section 8.

The Committee relies on the plain meaning of section 8 to support its argument and *Gramex Corporation v. Von Romer,* 603 S.W.2d 521 (Mo. banc 1980).

■ First, *Leoffler* holds that "where a statute refers to a first class city, it has no application to a city operating under the charter form of government." *Id.* at 634. We reject the arguments of the Boundary Commission and St. Louis County that *Leoffler* applies to this case either directly or by analogy. The constitution limits the number of classes of cities to four, Mo. Const. art. VI, § 15, but does *not* say that a law applicable to any city shall apply to all cities in the class to which such city belongs. Article VI, sec-

tion 8, clearly places such a limit on the legislature when it adopts laws relating to counties. Thus, *Leoffler* implicitly relies on the absence of constitutional limiting language regarding cities to reach its decision. We do not believe the reasoning of *Leoffler*, which discusses constitutional charter cities, has any bearing on the interpretation of laws relating to counties where the constitution contains the explicit limitations on which the case turns.

Second, in *Gramex Corporation*, this Court considered whether a law applicable to certain first class counties based on their geographic area violated the principles of article VI, section 8. The legislature had passed a statute conditioning repeal of the provisions of the Missouri blue law upon all counties in a specified geographic area agreeing by popular vote to lift the proscription on Sunday sales. In striking that provision the Court found that the law did not apply equally to all counties in a class and violated article VI, section 8.

> We conclude that those portions of § 578.110 which treat first class counties by area are unconstitutional because they treat the first class counties in the St. Louis area differently from Greene County, the only other first class county not covered by special legislation.... They violate the last sentence of art. VI, § 8, which requires that "a law applicable to any county shall apply to all counties in the class to which such county belongs."

*Gramex Corporation*, 603 S.W.2d at 526.

■ We have no reason either to repeat the long explanation of the purposes of section 8 upon which *Gramex Corporation* relied or to reach a different result.

Finally, the Boundary Commission and St. Louis County argue that article VI, section 18, is the exception to which the first sentence of article VI, section 8, applies. We disagree.

■ Section 18 empowers counties having sufficient *population to organize* itself according to "a charter for its government." Counties are classified according to the *assessed valuation of the property* within the county. § 48.020, RSMo 1986. The form of government adopted by a county pursuant to article VI, section 18, has nothing whatever to do with its classification. A first class county adopting a charter form of government remains a first class county for purposes of article VI, section 8. There is simply no language in article VI, section 18, that by expression or implication negates the requirements of article VI, section 8, as to classes of counties.

We remain of the view expressed in *Gramex Corporation* that the constitution means what its says, despite the inconvenience it causes St. Louis County and the Boundary Commission in this case.

By its clear terms, Section 72.400.2 applies to St. Louis County alone. To their credit, neither the Boundary Commission nor St. Louis County claim otherwise. If the statute applies only to St. Louis County, it cannot apply to other first class counties. By its own terms, Section 72.400.2 violates article VI, section 8. It is unconstitutional.

■ On rehearing the Boundary Commission and the County urge that "if the General Assembly adopts a law which applies to any county then it 'shall apply to all counties in the class to which such county belongs.'" Respondents conclude that "rather than finding the Boundary Commission law unconstitutional, [this Court] should in reality have declared that by force of [Art. VI, section] 8 all first class counties have the option to have a boundary commission if they so choose." In effect, the Boundary Commission and St. Louis County urge that the Court sever those portions of the statute that limit its application to St. Louis County, leaving the remainder of the boundary commission law in place.

Section 1.140, RSMo 1986, governs questions of severability. It provides in pertinent part:

> "The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions are so essentially and inseparably connected with, and are so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one...."

**624**

We do not believe it is possible to sever the offending provision of Section 72.400.2 from the remainder of the law. Where the legislature intended a statutory provision to apply only to a particular county, removal of that language substantially alters the intent of the General Assembly. We cannot say with any degree of assurance that the legislature intended the boundary commission law to apply to all counties or even to all first class counties in Missouri. Indeed, by the language it used, the legislature clearly intended that the legislation apply *only* to St. Louis County. For this Court to hold otherwise for the convenience of St. Louis County would be to engage in an act of legislation which neither the constitution nor Section 1.140 permits.

We hold that the entire statute must fail.

### B.

Having determined that Section 72.400 violates the constitution, we need not address the federal equal protection claims brought by the Committee. Nor do we believe we can address the other claims relating to which, if any, of the competing petitions ought first to go before the voters. That determination appears to depend on facts not developed in the record below or considered by the trial court.

### C.

There remains the question of the Committee's request for attorney's fees pursuant to 42 U.S.C. section 1988. The applicable portion of that statute reads:

> (b) Attorney's fees: In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, the Religious Freedom Restoration Act of 1993, or title VI of the Civil Rights Act of 1964, the court, *in its discretion,* may allow the prevailing party, other than the United States, a reasonable attorney's fee as a part of the costs.

[Emphasis added.]

The trial court exercised its discretion in this case and refused to award the Committee its attorney's fees. Having reviewed the pleadings and the record, this Court does not find that decision an abuse of discretion.

### III.

We hold that Sections 72.400 to 72.420, RSMo Supp.1993, violate article VI, section 8 of the Missouri Constitution. The statutes are unconstitutional. The judgment of the trial court denying the Committee for Incorporation of Wildwood's attorney's fees is affirmed. The remainder of the trial court's judgment is reversed and the cause remanded.

All concur.