Wayne **BERRY**, et al.,
Plaintiffs/Appellants,

v.

**STATE** of Missouri, et al.,
Defendants/Respondents.

No. 77524.

Supreme Court of Missouri,
En Banc.

Oct. 24, 1995.

William A. Richter, Robert Schultz, St. Louis, Vincent J. Garozzo, Angela B. Desloge, St. Louis, Jerome Wallach, Michael F. Dandino, St. Louis, Robert C. Jones, Clayton, F. Douglas O'Leary, St. Louis, for Appellants.

John A. Ross, County Counselor, James H. White, Deputy Counselor, Jacqui De Laet Skoglund, Assistant County Counselor, Clayton, for Respondents.

BENTON, Judge.

Five cities appeal a judgment upholding House Bill 618 (1993), which redistributes revenue from the St. Louis County sales tax among the municipalities in the county. *§ 66.620 RSMo Supp.1993.* Multiple constitutional challenges give this Court jurisdiction. *Mo. Const. Art. V, § 3.* Affirmed.

## I.

In 1977, the General Assembly authorized a sales tax for St. Louis County. *§ 66.600 RSMo 1978.* The same year, county voters approved the ballot proposition:

> Shall the St. Louis County Council be authorized to impose a one percent County-wide sales tax for the benefit of both the incorporated and unincorporated areas of the County?
>
> ___ For the sales tax
>
> ___ Against the sales tax

The one percent rate has been in effect since the vote in 1977. Imposition of the county levy voided the sales taxes of all municipalities in the county, for the life of the county sales tax. *§ 66.600.1 RSMo 1978.*

The revenue from the county sales tax flows by statutory formula to municipalities and the county. *§ 66.620 RSMo 1978.* As for municipalities, the key is whether a city is "Group A" or "Group B". *Id.* Before the advent of the county sales tax, most Group A municipalities had a city sales tax, but most Group B municipalities did not. Group B also includes the unincorporated areas of the county. *Id.*

St. Louis County voters have never approved a specific distribution formula. Prior to H.B. 618, the General Assembly, on five occasions, changed the distribution of sales tax revenues within St. Louis County. *See* 1977 Mo.Laws 173; 1979 Mo.Laws 261; 1980 Mo.Laws 260; 1983 Mo.Laws 335; 1984 Mo.Laws 365; 1987 Mo.Laws 444; *City of Chesterfield v. Director of Revenue,* 811 S.W.2d 375, 376 (Mo. banc 1991).

In 1993, the legislature revised the distribution formula by passing H.B. 618. *§ 66.620 RSMo Supp.1993.* The revision, in effect, shifted a larger portion of the sales tax revenue from Group A to Group B municipalities and to St. Louis County.

Five Group A cities (with ten of their taxpayers) sued to declare unconstitutional the distribution formula in H.B. 618. By summary judgment, the circuit court ruled H.B. 618 "constitutional and valid against all of the challenges raised by the Plaintiffs."

## II.

At trial, the Group A plaintiffs attacked H.B. 618 for violating Article VI, § 8 of the Missouri Constitution: "A law applicable to any county shall apply to all counties in the class to which such county belongs." However, on April 4, 1995, the People amended the constitution to delete the quoted sentence, retroactively. *1995 Vernon's Mo.Legis.Serv.*

*(No. 1) A–1.* This constitutional amendment overruled the principal authority for the Group A cities, *State ex rel. City of Ellisville v. St. Louis County Board of Election Commissioners,* 877 S.W.2d 620 (Mo. banc 1994).

Plaintiffs also invoke the second sentence in Art. VI, § 8: "The number of classes shall not exceed four, and the organization and powers of each class shall be defined by general laws so that all counties within the same class shall possess the same powers and be subject to the same restrictions." Again, the 1995 constitutional amendment specifically creates a separate class of charter counties "outside of the classification system established under section 8 of this article [VI]." *1995 Vernon's Mo.Legis.Serv. (No. 1) A–1.* Thus, H.B. 618 is now constitutional under Article VI, § 8.

■ In their reply brief, four of the Group A cities argue that the constitutional amendment violates the "one subject" requirement of Article XII, § 2(b), Missouri Constitution. "Assignments of error set forth for the first time in the reply brief do not present issues for appellate review." *In re Gilbert,* 563 S.W.2d 768, 771 (Mo. banc 1978). Appellate courts are generally "precluded from addressing assertions made for the first time in a reply brief because a respondent has no opportunity to address the argument." *P & K Heating and Air Conditioning, Inc. v. Tusten Townhomes Redevelopment Corp.,* 877 S.W.2d 121, 124 (Mo.App. 1994). Therefore, this Court does not rule on the constitutionality of the 1995 amendment under Article XII, § 2(b).

### III.

■ According to the plaintiffs, the distribution formula in H.B. 618 divides cities of the same class into Group A and Group B, in violation of Article VI, § 15:

> The general assembly shall provide by general laws for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the powers of each class shall be defined by general laws so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions.

After H.B. 618, cities of each class in St. Louis County possessed the same power to levy the city sales tax: none. *§ 66.600.1 RSMo Supp.1993* (revoking authority under §§ 94.500–94.550). Likewise, for cities of the same class, H.B. 618 does not change restrictions on spending or any other aspect of governance. The Group A cities assert a "restriction" because cities of the same class have different "power" to receive revenue from the countywide tax.

■ Article VI, § 15 does not encompass this type of power or restriction. Elsewhere, the constitution expressly grants the General Assembly control of local sales taxes. *Mo. Const. Art. X, §§ 1 and 11(f); St. Louis County v. University City,* 491 S.W.2d 497, 499 (Mo. banc 1973); *State ex rel. Emerson v. Mound City,* 335 Mo. 702, 73 S.W.2d 1017, 1025–1026 (1934). The legislature thus has authority to designate, by general law, the distribution of a county sales tax for local government purposes. *See id.* at 1026. In splitting county sales tax revenue among municipalities in St. Louis County, the General Assembly is not granting powers or placing restrictions on any class of cities.

The Group A cities, comparing themselves to cities of the same class in *other* counties, claim a violation of Article VI, § 15 because they cannot pass a municipal tax and receive the resulting revenue. The 1995 constitutional amendment to Article VI, § 8 clearly permits legislation specific to individual counties. *1995 Vernon's Mo.Legis.Serv. (No. 1) A–1.* Necessarily, municipalities of the same class will be treated differently by county-specific legislation, such as a countywide sales tax. In order for the 1995 constitutional amendment to have meaning, Article VI, § 15 cannot bar side effects on cities resulting from county-specific laws. *See Boone County Court v. State,* 631 S.W.2d 321, 326 (Mo. banc 1982). Thus, H.B. 618 is not unconstitutional under Article VI, § 15.

### IV.

The Group A cities attack the revised formula in H.B. 618 as a new tax enacted without voter approval as required by the Hancock Amendment. *Mo. Const. Art. X, §§ 16–*

22. True, H.B. 618 became a law without voter approval.

■ The revised distribution formula in H.B. 618, however, is not a new tax. The one percent rate of the St. Louis County sales tax has not increased since its inception in 1977. Changing the distribution of revenue is not the "levying" of a new tax requiring voter approval. *Mo. Const. Art. X, § 22(a)*.

■ Further invoking the Hancock Amendment, the Group A cities assert that the revised distribution formula shifts the tax burden to Group A cities, forcing them to pay the costs for new or expanded activities by other political subdivisions. *See Mo. Const. Art. X, §§ 16 and 21*. The Group A cities misinterpret these constitutional provisions. Article X, § 16 prohibits "the state" from shifting the tax burden *from itself* to counties and other political subdivisions. *See Fort Zumwalt School District v. State*, 896 S.W.2d 918, 921 (Mo. banc 1995). Article X, § 21 likewise prohibits "the state" from requiring new or increased operations by local governments. *See Boone County Court v. State*, 631 S.W.2d 321, 325 (Mo. banc 1982). In H.B. 618, the state is not shifting its tax burden to the Group A cities nor requiring new or increased levels of operation by the Group A cities. Thus, the Hancock Amendment does not invalidate H.B. 618.

## V.

■ The Group A plaintiffs argue that H.B. 618 requires the expenditure of their municipal funds for non-municipal purposes, in violation of Article VI, § 23: "No county, city or other political corporation or subdivision of the state shall own or subscribe for stock in any corporation or association ... or grant public money or thing of value to or in aid of any corporation, association or individual." Article VI, § 23 clearly prohibits giving public money to *private* entities. *St. Louis Children's Hosp. v. Conway*, 582 S.W.2d 687, 691 (Mo. banc 1979). Article VI, § 23 does not apply to shifts in revenue among public bodies. *See Enright v. Kansas City*, 536 S.W.2d 17, 19 (Mo. banc 1976); *Vrooman v. City of St. Louis*, 337 Mo. 933, 88 S.W.2d 189, 194–195 (1935).

■ The Group A cities next attempt to find a similar prohibition in sections 1 and 3 of Article X: counties and other political subdivisions may exercise taxing power "for county, municipal and other corporate purposes"; "[t]axes may be levied and collected for public purposes only"; and the state may exercise taxing power "for state purposes".

This case involves the distribution of county revenues—not municipal funds—to help finance municipalities in the county, as well as county government. On this record, financing local governments is a proper public, county, and non-state purpose.

## VI.

■ The Group A cities finally argue that the distribution formula unconstitutionally surrenders and suspends their power to tax in violation of Article X, § 2: "The power to tax shall not be surrendered, suspended or contracted away, except as authorized by this constitution."

■ By the constitution, the General Assembly decides the sales tax authority of local governments. *Mo. Const. Art. X, §§ 1 and 11(f)*. "Cities and like municipal corporations have no inherent power to levy and collect taxes, but derive their powers in that respect from lawmaking power." *Holland Furnace Co. v. City of Chaffee*, 279 S.W.2d 63, 69 (Mo.App.1955). Moreover, the general assembly may withdraw from a city, any previous delegation of taxing authority. *Whipple v. City of Kansas City*, 779 S.W.2d 610, 613–614 (Mo.App.1989). With the enactment of a county sales tax, city sales taxes were made "void and of no effect." *§ 66.600.1 RSMo 1978* (revoking authority under §§ 94.500–94.570). The General Assembly has the constitutional authority to void sales taxes and to redistribute the revenue of a county sales tax. *Mo. Const. Art. X, §§ 1 and 11(f)*.

## VII.

The judgment of the circuit court is affirmed.

HOLSTEIN, C.J., PRICE, LIMBAUGH, ROBERTSON and COVINGTON, JJ., and GARRISON, Special Judge, concur.