

# SUPREME COURT OF MISSOURI
## en banc

JAMES SWAFFORD, )
                                    )
                 Appellant, )
                                    )
v. )     No. SC99563
                                    )
TREASURER OF MISSOURI AS )
CUSTODIAN OF SECOND )
INJURY FUND, )
                                    )
                 Respondent. )

*Opinion issued January 10, 2023*

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

James Swafford appeals the Labor and Industrial Relations Commission's ("Commission") decision overruling his claim for permanent total disability ("PTD") benefits from the Second Injury Fund ("Fund"). On appeal, Swafford challenges the Commission's decision for allegedly disregarding the expert testimony he offered to establish a causal relationship between his preexisting disabilities and his primary injury. Because Swafford failed to establish his preexisting disabilities "directly and significantly aggravated or accelerated" his primary injury pursuant to section 287.220.3(2)(a)a(iii),[1] the Commission's decision is affirmed.

---

[1] All statutory references are to RSMo 2016.

## Background

Swafford worked as a hostler for Waller Truck Company; his primary responsibility was transporting semi-trailers from one location to another. Prior to suffering the primary injury giving rise to this case, Swafford had multiple preexisting disabilities. First, he suffered from ankylosing spondylitis ("AS"), a congenital condition causing his spine and rib bones to fuse together over time and resulting in "constant pain," difficulty breathing, curved posture, and a limited range of motion. Swafford also suffered from various cardiac conditions for which he has undergone multiple procedures, including hypertrophic cardiomyopathy, mitral valve regurgitation, and atrial fibrillation. Lastly, Swafford has suffered from right-shoulder pain since 2012, which was associated with his repetitive single-handed cranking of jacks used to adjust the height of semi-trailers. In 2016, he was diagnosed with bursitis in his right shoulder, which required steroid injections every three to four months.

Swafford's primary injury occurred in October 2017 when he slipped while getting out of a truck and was left hanging by his right arm. He "felt a pop" in his right shoulder and was subsequently diagnosed with a "moderately large rotator cuff tear" and a labrum tear. After settling his workers' compensation claim with his employer, Swafford filed a claim for PTD benefits against the Fund, alleging his preexisting disabilities, combined with his primary injury, rendered him permanently and totally disabled.

In support of his claim, he presented independent medical examination reports from Dr. Erich Lingenfelter and Dr. Brent Koprivica. Dr. Lingenfelter noted:

2

I believe he has AC joint arthropathy and mechanical impingement both from a fall as well as his preexisting AS. … I think he does now have inflammatory bursitis as a result of the fall and that fall is the sentinel event and primary prevailing factor for his inflammatory bursitis and AC joint arthropathy however at present he is a poor surgical candidate and has issues such as hypertrophic cardiomyopathy and other significant medical issues that would make him be a very poor surgical candidate .... I have equal share to blame i[n] his current autoimmune situation. Because of his spine issues his scapula is now postured in a position that cannot elevate and protract regularly in order to allow more room for the supraspinatus outlet. This creates impingement phenomenon as well so this is also likely equal [sic] a contributing factor. ... In summary he has significant preexisting pathology and some things that are equally contributing to his issues however the sentinel event that created the chronic inflammatory bursitis which I might add is likely exacerbated by his disease process could be treated with cortisone and a round of therapy but no further treatment on top of that.

Dr. Koprivica opined that there was a "significant synergistic effect" between Swafford's preexisting disabilities and primary injury.[2]

The Administrative Law Judge ("ALJ") ultimately denied Swafford's claim, concluding he failed to demonstrate he suffered from a "qualifying" preexisting disability under section 287.220.3.[3] Swafford appealed to the Commission, which affirmed the ALJ's decision. The Commission agreed with the ALJ's determination that Swafford failed to show his preexisting disabilities "directly and significantly aggravated or

---

[2] Additionally, Swafford presented medical records from one of his treating physicians, Dr. Kent Huston. Dr. Huston provided no opinions regarding the cause of Swafford's permanent and total disability.

[3] To constitute a "qualifying" injury under the statute, it must be medically documented, equal to at least 50 weeks of permanent partial disability ("PPD"), and meet one of four listed criteria in section 287.220.3(2)(a)a(i)-(iv).

accelerated" his primary injury pursuant to section 287.220.3(2)(a)a(iii). Swafford

appeals the Commission's decision.[4]

## Standard of Review

The Commission's decision must be "supported by competent and substantial

evidence upon the whole record." Mo. Const. art. V, sec. 18. On appeal, the

Commission's factual findings shall be conclusive and binding in the absence of fraud,

and no additional evidence shall be heard. Section 287.495.1. This Court also defers to

the Commission's determinations regarding the credibility of witnesses and the weight

given to conflicting evidence. *Weibrecht v. Treasurer of Mo.*, No. SC99493, ___ S.W.3d

___, slip op. at 5 (Mo. banc Jan. 10, 2023). On appeal, this Court:

> shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1(1)-(4).

---

[4] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

**Analysis**

The issue in this case is whether the Commission erred in determining Swafford failed to establish that he is entitled to PTD benefits from the Fund. To be entitled to PTD benefits under subsection 3, an employee must meet two conditions. First, the employee must have a qualifying preexisting disability. Section 287.220.3(2)(a)a. To satisfy the first condition and establish a qualifying preexisting disability, an employee's preexisting disability must be medically documented, equal at least 50 weeks of permanent partial disability, and satisfy one or more of the criteria in items (i)-(iv) of section 287.220.3(2)(a)a. Second, the employee must show the employee "thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability ... results in a permanent total disability." Section 287.220.3(2)(a)b.

Swafford sought to satisfy the first condition and establish a qualifying disability under item (iii) of section 287.220.3(2)(a)a because his prior disability resulted from one or more non-compensable injuries. To qualify under item (iii), an employee's preexisting qualifying disability must "directly and significantly aggravate[] or accelerate[]" the primary workplace injury.

Swafford claims that, in finding he failed to satisfy the requirements of section 287.220.2(2)(a)a(iii), the Commission "arbitrarily disregarded, ignored, and rejected unimpeached and uncontroverted medical evidence" demonstrating that his preexisting disabilities "directly and significantly aggravated or accelerated" his primary injury to

5

render him permanently and totally disabled. As a result, he claims its decision was not supported by sufficient and competent evidence.

Despite Swafford's contentions, the Commission expressly found Dr. Lingenfelter's "vaguely worded report" failed to establish, "as a factual matter," that Swafford's preexisting disabilities "*significantly and directly* aggravated his primary injury."[5] It also adopted the ALJ's other findings, including the ALJ's finding that Dr. Koprivica provided "no medical evidence" that any of Swafford's preexisting disabilities "directly and significantly aggravated or accelerated" his primary injury. As such, the Commission did not disregard, ignore, or reject Swafford's medical evidence. Rather, it determined that evidence was insufficient to prove his claim under section 287.220.3(2)(a)a(iii). Swafford correctly contends these unrebutted medical reports established that his preexisting disabilities had *some* worsening effect on his primary injury. But the Commission did not err in concluding those reports were insufficient to show that worsening effect rose to the level of *significant and direct* aggravation or acceleration.

"Workers' compensation law is entirely a creature of statute, and when interpreting the law the court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381 (Mo. banc 2014). "In the absence of statutory definitions, the plain and ordinary meaning of a term may be

---

[5] The Commission made the same express finding regarding Dr. Huston's treatment records.

6

derived from a dictionary, and by considering the context of the *entire* statute in which it appears." *State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225 (Mo. banc 2007) (internal citation omitted). Additionally, this Court "presumes every word, sentence, or clause in a statute has effect, and the legislature did not insert superfluous language." *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 809 (Mo. banc 2017).

The phrase "directly and significantly aggravates or accelerates" contained in section 287.220.3(2)(a)a(iii) has not been construed by this Court. *Webster's Third New International Dictionary* defines "aggravate" as "to burden" and "to add weight to" and "accelerate" as "to hasten the ordinary progress or the development of" and "increase the rate or amount of." *Webster's Third New International Dictionary of the English Language* 10, 41 (3d ed. 1993). As such, the "aggravate or accelerate" requirement can be interpreted to mean the preexisting disabilities must exacerbate the primary injury in some way. But that alone is not enough; the preexisting disabilities must *directly* and *significantly* exacerbate the primary injury. "Significant" is defined as "deserving to be considered" and "direct" is defined as "characterized by or giving evidence of a close especially logical, casual, or consequential relationship." *Id.* at 640, 2116. Hence, the impact of the preexisting disabilities on the primary injury must be more than incidental; they must clearly exacerbate the primary injury in a meaningful way.

To better understand this distinction, it is helpful to examine the legislative origins of section 287.220.3(2)(a)a(iii). The legislature amended section 287.220 in 2013 "to limit the number of workers eligible for fund benefits because the Fund was insolvent." *Weibrecht*, No. SC99493, ___ S.W.3d at ___, slip op. 2. In doing so, the legislature

7

created subsection 2, which "retained the pre-amendment framework for Fund liability" for compensable injuries occurring before January 1, 2014. *Id.* For compensable injuries occurring after that date, the legislature created subsection 3, which "limited fund liability for [PTD] claims[.]" *Id.* Accordingly, the standards imposed by subsection 3 are *more restrictive* than those imposed by subsection 2.

Under subsection 2, a claimant is entitled to PTD benefits from the Fund if the employee is rendered permanently and totally disabled by the combined effects of any qualifying preexisting disabilities and the primary injury occurring prior to January 1, 2014. Likewise, section 3 requires that the subsequent compensable work-related injury combine with any qualifying preexisting disabilities to result in a permanent total disability. Section 287.220.3(2)(a)b. But subsection 3 adds further requirements, including that any preexisting disability be "medically documented." Section 287.220.3(2)(a)a. And for a claim based on a preexisting disability resulting from a non-compensable injury, like Swafford's claims, the claimant also must prove the preexisting disability "directly and significantly aggravates or accelerates" an employee's primary injury. Section 287.220.3(2)(a)a(iii). The requirement that a qualifying preexisting disability combine with or, in Dr. Lingenfelter's terms, "contribute" to an employee's permanent and total disability is distinct from whether it "directly and significantly aggravates or accelerates" the employee's primary injury.

Dr. Lingenfelter repeatedly noted that Swafford's preexisting disabilities affected his primary injury, but he did not clearly articulate *the extent* to which any of those disabilities exacerbated that injury. Without such elaboration, the Commission was not

8

required to conclude, based on that report, that Swafford's preexisting disabilities

"*directly and significantly*" worsened his October 2017 workplace injury.  Furthermore,

Dr. Koprivica stated there was a "significant synergistic effect" between Swafford's

preexisting disabilities and primary injury.  But that specific language relates to the

standard for fund liability *prior to the 2013 amendments* to section 287.220.  *See Pierson*

*v. Treasurer of Mo.*, 126 S.W.3d 386, 389 (Mo. banc 2004) ("Where the statute applies,

the employer is liable only for the amount of disability caused by the current injury, and

*the fund is liable in the amount of the increase in disability caused by the synergistic*

*effect of the two injuries*." (emphasis added)).[6]  While Swafford correctly asserts that

medical experts need not use the "magic words" contained in section

287.220.3(2)(a)a(iii) to prove his claim, the fact that Dr. Koprivica did employ "magic

words" ("synergistic effect") associated with the less-stringent standard ("combine with")

undoubtably undermines his claim.  The Commission did not err by declining to construe

the language in Dr. Koprivica's report beyond its plain meaning—that Swafford qualified

for fund liability under the "pre-amendment framework" now contained in section

287.220.2.  Such language was insufficient to establish fund liability under section

287.220.3.[7]

---

[6] While the term "synergistic effect" did not appear in the prior statute itself, it was employed by courts—and medical experts—to describe the standard for Fund liability imposed by section 287.220.1.  *See, e.g.*, *Pierson*, 126 S.W.3d at 389; *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 631 (Mo. banc 2012).

[7] In his reply brief, Swafford argues his case should be remanded to the ALJ to allow him to present additional evidence regarding whether he was entitled to Fund liability under section 287.220.3(2)(a)b.  He contends such an opportunity is required, in part, because

**Conclusion**

The Commission's findings were supported by substantial and competent evidence. Swafford failed to establish his primary injury and preexisting disabilities entitled him to PTD benefits from the Fund under section 287.220.3(2)(a)a(iii). Accordingly, the Commission's decision is affirmed.

_____
Mary R. Russell, Judge

Wilson, C.J., Powell, Fischer and Ransom, JJ, concur;
Breckenridge, J., dissents in separate opinion filed;
Draper, J., concurs in opinion of Breckenridge, J.

---

this Court's decision in *Treasurer of Missouri v. Parker*, 622 S.W.3d 178 (Mo. banc 2021), constituted "a significant clarification of statutory language" concerning "what evidence would be necessary to prevail under section 287.220.3(2)(a)b." But Swafford made no argument about presenting additional evidence prior to his reply brief. "Assignments of error set forth for the first time in the reply brief do not present issues for appellate review." *Berry v. State*, 908 S.W.2d 682, 684 (Mo. banc 1995) (internal quotation omitted). Accordingly, this claim is denied.



# SUPREME COURT OF MISSOURI
## en banc

JAMES SWAFFORD, )
)
          Appellant, )
)
v. )    No. SC99563
)
TREASURER OF MISSOURI AS )
CUSTODIAN OF SECOND )
INJURY FUND, )
)
          Respondent. )

### DISSENTING OPINION

I respectfully dissent from the principal opinion's holding that there was substantial and competent evidence to support the Labor and Industrial Relations Commission's finding that James Swafford failed to establish his prior qualifying disabilities directly and significantly aggravate and accelerate his primary injury, as required by section 287.220.3(2)(a)a(iii).[1] I would find the evidence presented by Mr. Swafford was sufficient to prove his preexisting qualifying disabilities of ankylosing spondylitis and hypertrophic cardiomyopathy directly and significantly aggravated and accelerated his right shoulder

---

[1] All statutory references are to RSMo 2016.

and elbow injuries. Accordingly, I would vacate the commission's denial of his claim for second injury fund benefits and remand to the commission.[2]

Mr. Swafford presented evidence his employer sent him to Dr. Erich Lingenfelter, an orthopedic surgeon, for evaluation of his right shoulder. Dr. Lingenfelter made the following entry in his independent medical examination ("IME") report:

> The labral tear has been present and has existed since 2012 which is confirmed by previous MRIs. This did not happen acutely and quite frankly labral tears in this age group do not even get fixed. At the most they sometimes get debrided but I do not believe this is his pain generator. I think he has AC joint arthropathy and mechanical impingement both from a fall as well as his pre-existing AS. He has history reports that this was somewhat more of a sentinel event that changed his function however there is no detectable signs of a rotator cuff tear on MRI and a partial-thickness tear typically would not cause this degree of weakness. I think he does now have inflammatory bursitis as a result of the fall and that fall is the sentinel event and primary prevailing factor for his inflammatory bursitis and AC joint arthropathy however at present he is a poor surgical candidate and has issues such as hypertrophic cardiomyopathy and other significant medical issues that would make him be a very poor surgical candidate and I would not advise doing anything about this anyway at this point or likely ever. [Of] . . . equal share to blame i[n] his current autoimmune situation. Because of his spine issues his scapula is now postured in a position that cannot elevate and protract regularly in order to allow more room for the supraspinatus outlet. This increases impingement phenomenon as well so this is also likely equal[ly] a contributing factor . . . . In summary he has significant preexisting pathology and some things that are equally contributing to his issues however the sentinel event that created the chronic inflammatory bursitis which I might add is likely exacerbated by his disease process could be treated with cortisone and a round of therapy but no further treatment on top of that.

---

[2] In her dissenting opinion, Commissioner Shalonn K. Curls properly applied the governing law to the evidence, and, with some alterations, I adopt her analysis of the facts and the law, as well as her findings and conclusions, without further attribution.

2

Additionally, Dr. Lingenfelter's IME report notes Mr. Swafford has "relatively good pain-free range of motion of left side but it is also limited because of the scapular posturing which is likely a manifestation of his ankylosing spondylitis." He added Mr. Swafford "has limited ability to protract or move his scapula in a coordinated position," and that he "has extremely poor posture likely not his fault because his spine is probably fused at this point or close to that."

Dr. Lingenfelter's IME report demonstrates Mr. Swafford's preexisting ankylosing spondylitis makes his right shoulder injury significantly worse. He explained how the ankylosing spondylitis prevented Mr. Swafford scapula from functioning properly, which, in combination with the work injury, significantly contributed to the impingement phenomenon in the right shoulder. Dr. Lingenfelter expressly stated Mr. Swafford's inflammatory bursitis from the shoulder injury was exacerbated by the preexisting disease process. Dr. Lingenfelter also confirmed the effects of Mr. Swafford's shoulder injury are made worse by the fact he is not a surgical candidate due to his preexisting heart condition. Dr. Lingenfelter opined the shoulder injury Mr. Swafford suffered related to his October 6, 2017 work accident was significantly worse due to his preexisting ankylosing spondylitis. The October 6, 2017 injury would not have been as bad, as serious, or as severe as it was without the ankylosing spondylitis.

Additionally, Mr. Swafford's treatment records from his rheumatologist, Dr. Kent Huston, support Dr. Lingenfelter's conclusions that Mr. Swafford's ankylosing spondylitis aggravated his shoulder problems, including shoulder pain and loss of motion. Dr. Huston started treating Mr. Swafford in 2015 for ankylosing spondylitis. Mr. Swafford

3

complained to Dr. Huston about right shoulder pain, beginning in January 2016. At that point, Dr. Huston's examination revealed full range of motion of the shoulders and elbows, and good grip strength bilaterally. By March 2017, Mr. Swafford reported to Dr. Huston's nurse practitioner that he was having pain in his right shoulder and right elbow, and her examination revealed right shoulder pain with decreased range of motion. He received steroid injections in his right shoulder and right elbow. On October 18, 2017, Mr. Swafford reported to Dr. Huston's nurse practitioner that he was noticing more pain in his neck and right shoulder, and his physical examination showed decreased range of motion in the right shoulder with pain. Mr. Swafford received another injection in his right shoulder.

The rheumatology records show Mr. Swafford's ankylosing spondylitis had progressed to the point before his work injury where it was impairing the range of motion in his right shoulder and causing right shoulder pain. However, he was still able to work as a hostler. The shoulder problems caused by the ankylosing spondylitis aggravated the work injury by making his shoulder worse and rendering him unable to continue his work as a hostler.

Dr. Brent Koprivica's opinions do not contradict or dispute Dr. Lingenfelter's opinions about the interaction between Mr. Swafford's preexisting disabilities and his work injury. In analyzing the case under section 287.220.2, Dr. Koprivica did not specifically express an opinion about whether Mr. Swafford's preexisting disabilities directly and significantly aggravated or accelerated his work injury. However, Dr. Koprivica did not counter or refute Dr. Lingenfelter's conclusion despite specifically referencing Dr. Lingenfelter's notes in his report.

4

In fact, several of Dr. Koprivica's opinions support the conclusion that Mr. Swafford's preexisting disabilities aggravated his work injury by making the effects of that injury worse, more troublesome, and more burdensome than it would be without the preexisting disabilities. Dr. Koprivica stated, "[W]hen one looks at the impact of combining the significant preexistent industrial disabilities that I have identified with the additional disability attributable to the October 6, 2017, work injury claim, there is significant synergistic effect." He added, "[N]oting that Mr. Swafford has not successfully returned to the open labor market since the October 6, 2017, work injury, noting the level of disability which he presents from the combination of the multiple disabilities, there are concerns that Mr. Swafford is, in fact, permanently and totally disabled." Dr. Koprivica's report notes, "[T]he level of significance of his thoracic and lumbar pain represented an ongoing permanent obstacle to reemployment for job tasks requiring any significant amount of bending, pushing, pulling, twisting and heavier lifting and carrying." He stated, "There is contribution to the restrictions I would place regarding right shoulder from preexistent industrial disability."

Dr. Koprivica confirmed Mr. Swafford's ankylosing spondylitis and heart condition each constituted preexisting permanent partial disability of 25-percent permanent partial disability to the body as a whole, which exceeds the threshold of 50 weeks required by section 287.220.3(2)(a)a.

Dr. Lingenfelter's uncontroverted and unimpeached IME report, along with the support of Dr. Huston's treatment records and Dr. Koprivica's report, provides strong

5

medical evidence that these preexisting disabilities directly and significantly aggravated or accelerated Mr. Swafford's work injury.

Dr. Lingenfelter's IME report establishes Mr. Swafford's preexisting ankylosing spondylitis directly and significantly aggravated and accelerated the right upper extremity injury he suffered at work. It is undisputed, and the ALJ found, the preexisting ankylosing spondylitis exceeds 50 weeks of permanent partial disability.

Notably, until his October 6, 2017 work injury, Mr. Swafford was able to work as a hostler within the restrictions imposed by his preexisting disabilities. The injury to his right upper extremity at Waller Truck Company, Inc., not only closed the door on his ability to do that job, but it also closed the door on any other job that might be available in the open labor market, including jobs in retail sales and as a cashier, because those jobs require use of his right upper extremity that exceed his medical restrictions. The evidence shows Mr. Swafford is, therefore, permanently and totally disabled.

Mr. Swafford's ankylosing spondylitis and heart condition each exceeds the 50-week minimum on its own. Those conditions satisfy the requirement that there be "a medically documented preexisting disability equaling a minimum of fifty weeks." As explained above, those conditions aggravated and accelerated Mr. Swafford's October 6, 2017 right shoulder injury.

The ALJ's award denying compensation based on a finding that Mr. Swafford had no qualifying preexisting disabilities pursuant to section 287.220.3 is against the weight of the evidence in this case. And an award that is "contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence."

6

*Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).  Because the principal opinion holds otherwise, I respectfully dissent.

_____
PATRICIA BRECKENRIDGE, JUDGE